

May 2, 2025

**VIA ECF**
The Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 21A
New York, NY 10007-1312
BuchwaldNYSDChambers@nysd.uscourts.gov

   Re: *PCVA Jane Doe v. UMG Recordings, Inc. et. al.*, 25-CV-02745

Dear Judge Buchwald,

  We write on behalf of Plaintiff, PCVA Jane Doe[1] in the above-captioned matter in response to Defendant, Kevin Wesley Liles' ("Liles") request for a pre-motion conference to move for sanctions. Liles' request should be seen for what it is— another attempt in a series of attempts to bully and intimidate Plaintiff, and her attorneys into abandoning her meritorious claims stemming from sexual assault perpetrated by Liles. At the outset, it is exceptionally ironic that Liles intends to seek sanctions for "a lack of candor" to the court, yet conveniently overlooks the demonstrably false representations *he* made to this court just one month ago, on April 8, 2025, when he stated-- "**[d]uring his storied career, Mr. Liles has never faced a single accusation of sexual impropriety.**" *See*, Doc. No.15. Yet, less than one month later Liles is asking this Court to sanction Plaintiff and her attorneys because of the existence of a prior release stemming from *prior accusations of sexual impropriety against Liles*. Before calling the kettle black, defense counsel would do well to review Rule 11(b) entitled "Representations to the Court."[2]

  In addition these patently false representations, Liles' letter is full of baseless denigrations of Plaintiff and her attorneys without any factual support. For example, Liles letter states that Plaintiff "withheld information from her attorneys … requested they file a lawsuit on her behalf, in bad faith, knowing she had already settled her claims, apparently hoping to extort a settlement[3] out of Mr. Liles

---

[1] Plaintiff has agreed to proceed with her full name, but given Liles' refusal to stipulate to amendment of the named parties, Plaintiff will await a ruling from the Court – to avoid the need to file two amended complaints.
[2] This representation begs all the same questions that Liles so readily asks Plaintiff: was he aware of the prior accusations? If not, did he make a reasonable inquiry by simply asking co-defendant UMG if there had been any prior accusations before making that bold representation to this Court? Logic dictates that one of those statements is true.
[3] At no point has Plaintiff or her attorneys engaged in any settlement discussions regarding this case, communicated any demands, or sent any letters regarding settlement. This is a baseless falsehood.



based on negative publicity." Not only are the communications between Plaintiff and her attorneys protected by attorney-client privilege, but more to the point, these statements are false. Plaintiff retained our firm one month before the expiration of the GMVA statute of limitations. Plaintiff recalls that while she was still employed by UMG Recording, Inc., she reported to her employer that Liles' was acting inappropriately towards her at work. However, nothing was done and she was wrongfully terminated in retaliation. After being wrongfully terminated, a lawyer negotiated a severance package for her based on the wrongful termination, retaliation and employment discrimination by UMG. That is her recollection of the events, which are all true. To that end, Plaintiff is not in possession of any of the documents from the employment dispute, including the release (it is defendants who have the documents)[4] and her lawyer, who appears to have been a solo practitioner, died in 2017.

Thus, Plaintiff did not bring this claim in bad faith, as it was never her intention to release Liles' individually for raping her in the employment dispute with UMG, nor did she even contemplate that she had done so. Her intent is supported by the fact she never told anyone about the rape when she complained to her supervisors about Liles' workplace behavior twenty (20) years ago. In this firm's decades of experience dealing with the survivors of sexual abuse, it is extremely uncommon for survivors to disclose the extent of their abuse contemporaneous with the incident. Indeed, that is the very purpose and intent behind New York's revival statues like the GMVA, the CVA, and the ASA – a recognition that survivors often need decades to seek justice for what they endured.

Plaintiff's intent and reasonable belief is also supported by New York law and the language of the release itself. In New York,[5] a general release is governed by principles of contract law. *Gyabaah v. Rivlab Transp. Corp.*, 102 A.D.3d 451, 451 (1st Dept. 2013). "Like any contract, a release must be 'read as a whole to determine its purpose and intent…'" *Smith v. City of New York*, 236 A.D.3d 414 (1st Dept. 2025) (quoting *W.W.W. Associates, Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (1990)). To that end, New York appellate courts have made clear that "where a release contains a recital of a particular claim, obligation or controversy and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, ***the general words of release <u>are deemed to be limited thereby</u>***." *Morales v. Solomon Mgmt. Co., LLC*, 832 N.Y.S.2d 195, 196 (1st Dept. 2007) (internal citations and quotations omitted) (emphasis added). Stated differently, the general language in the subject release is limited by the intended scope of the release.

Further, at the outset of the release, Kevin Liles is identified specifically as an "employee/representative of UMG Recordings Inc." The first three clauses of the release that follow make clear that the intent and scope of the agreement were to resolve "the case and all other matters between [Plaintiff and her employer] ***concerning the employment relationship and the termination of the employment relationship.***" Notably, "the case" refers to Plaintiff's charge (No. 230943/03) filed with

---

[4] If the representations of defense counsel are accepted as true, the release and supporting documents were not readily available to any party or easy to obtain.
[5] The plain language of the release states that it is to be interpreted and enforced under New York State Law.



May 2, 2025

the New York State Division of Human Rights, which alleges that Universal Music Group and Kevin Liles, as an aider and abettor, engaged in unlawful discriminatory practices **related to employment**. The release continues to reference the employment relationship between UMG and Plaintiff throughout. "[A] release may not be read to cover matters which the parties did not desire or intend to dispose of." *Morales*, at 197 (quoting *Cahill v. Regan*, 157 N.E.2d 505 (1959)).

Liles' letter is full of so many baseless ad hominem attacks on Plaintiff and her attorneys that it leaves little room for addressing Plaintiff's well-founded legal arguments above which were detailed in a letter provided yesterday to Liles' attorneys before they chose to move forward with this frivolous request for sanctions. *See* Plt's Ltr to Counsel as Exhibit "1". Perhaps this is because Liles' arguments are unconvincing. Tellingly, **Liles does not cite to a single New York state case** regarding how the scope of a general release is interpreted. Ironically, one of the cases Liles does cite (of course, not from New York, but from the 11th Circuit) holds that the appellant's legal arguments challenging the scope of a release <u>were not sanctionable</u>. *Blackwell v. Dep't of Offender Rehab.,* 807 F.2d 914, 915 (11th Cir. 1987)[6] ("[W]e ***disagree with the district court that Roberson's contentions were so lacking in legal merit as to justify by themselves the imposition of Rule 11 sanctions***.") (emphasis added). Plaintiff's legal argument is based on relevant law and is not "frivolous" or made in "bad faith" just because Liles disagrees with it.

In sum, when Plaintiff retained an attorney with one month left on the statute of limitations, Plaintiff was aware of an employment dispute with UMG involving Liles from twenty (20) years ago which resulted in her getting severance benefits. She was not in possession of any documents from that time. The lawyer who represented her was dead. Moreover, given that she did not disclose the rape, filed a charge of *employment discrimination* (not a civil lawsuit), and based on the language of the release as discussed above, she had and continues to have a good faith belief that the scope of the release was not intended to cover the rape by Kevin Liles. As further evidence that Plaintiff is not acting in bad faith, upon a prompt and through review of the release and applicable law by her counsel, Plaintiff has agreed to voluntarily dismiss all claims against her former employer, UMG, and any claims against Liles for harassment that occurred within the scope of his employment.

In conclusion, Plaintiff asks that this court outright deny Liles' request to make a motion for sanctions under Rule 11, and to the extent warranted, the question of the scope of the release can be determined on a motion to dismiss.

Sincerely,

*Lucas B. Franken*

---

[6] While the 11th circuit did uphold some of the sanctions in this case, it is entirely distinguishable from the instant action, not the least of which because *it was the same attorney who was involved in the previously released matter and the subsequent action who also violated a federal court order in trying to obtain attorneys fees. Id.* at 915.