**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PCVA JANE DOE,

                Plaintiff,

        v.

UMG RECORDINGS, INC. and KEVIN WESLEY LILES,

                Defendants.

Case No. 1:25-cv-02745

---

# MEMORANDUM IN SUPPORT OF DEFENDANT KEVIN WESLEY LILES'S MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD............................................................................................................. 6

ARGUMENT ........................................................................................................................ 6

    A.    The Release Unambiguously Covers Mr. Liles ........................................... 7

    B.    The Release Unambiguously Covers the Claims Alleged ......................... 7

CONCLUSION.................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................12

*Barone v. Marone*, No. 04-CV-2001 (NRB), 2007 WL 4458118 (S.D.N.Y. Dec. 14, 2007) ...........................................................................................................................................8

*Bensky v. Indyke*, 743 F. Supp. 3d 586 (S.D.N.Y. 2024) ................................................................6

*Colliton v. Cravath, Swaine & Moore LLP,* No. 08-CV-0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ............................................................................................12

*Doe 1 v. Gov't of United States Virgin Islands*, No. 23-CV-10301, 2025 WL 887439 (S.D.N.Y. Mar. 21, 2025) ...........................................................................................................6

*LeMay v. HW Keeney Inc.*, 124 A.D.2d 1026 (N.Y. App. Div. 1986) ..................................11, 13

*Leonzo v. First Unum Life Ins. co.*, No. 93-CV-0535, 1995 WL 505551 (S.D.N.Y. Aug. 23, 1995) ...........................................................................................................................7

*Long v. O'Neill*, 126 A.D.3d 404 (N.Y. App. Div. 2015) .........................................................7, 10

*M.M. v. Church of Our Lady of the Annunciation*, 162 N.Y.S.3d 598, 600-01 (N.Y. App. Div. 2022) .............................................................................................................................11

*Morales v. Solomon Management Co., LLC*, 38 A.D.3d 381, 381 (N.Y. App. Div. 2007) ............9

*Stevens v. Town of Chenango*, 167 A.D.3d 1105 (N.Y. App. Div. 2018) ......................................10

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ........................................................................6

*Treistman v. Ulster Cnty. Soc'y for Prevention of Cruelty to Animals*, 235 A.D.3d 1144 (N.Y. App. Div. 2025) ...............................................................................................................10

*Williamson Cent. Sch. Dist. v. E & L Piping, Inc.*, 261 A.D.2d 937 (N.Y. App. Div. 1999)...........7

## RULE

Federal Rule of Civil Procedure 12 ....................................................................................1, 6, 12

Pursuant to Federal Rule of Civil Procedure 12, Defendant Kevin Wesley Liles respectfully submits this Memorandum in Support of his Motion to Dismiss Plaintiff's Amended Complaint on the grounds that it is barred by a settlement agreement and release Plaintiff executed over twenty years ago.[1]

## PRELIMINARY STATEMENT

This is a case that should never have been brought. It is not only premised on a falsehood, but also unequivocally barred by the terms of a settlement agreement, release, and covenant not to sue that Plaintiff entered into twenty years ago. The Court need only review the plain terms of that agreement to dismiss this case with prejudice.

For nearly four decades, Kevin Liles has been a highly respected member of the music industry, routinely recognized not only for his business savvy and contributions to the culture, but also for his steadfast support of traditionally underrepresented groups. Starting as an unpaid intern at Def Jam Recordings in 1991, he worked his way from the ground up to become the President of Def Jam Recordings and Executive Vice President of Island Def Jam Music Group. He has served as an executive at other record labels (including 300 Entertainment which he co-founded), launched multiple brands and businesses, served on various Boards of Directors, and founded charities and philanthropic organizations (*e.g.*, Kevin Liles for a Better Baltimore Foundation Inc. and the Make it Happen Foundation) focused on creating opportunities and improving outcomes for marginalized communities and individuals lacking access to resources. He has received an honorary degree from his alma mater, Morgan State University, where he studied engineering as

---

[1] Plaintiff's claims are also time-barred and the allegations of the Amended Complaint fail to state a claim. However, pursuant to the guidance of this Court during the parties' May 15, 2025, pre-motion conference, Mr. Liles reserves argument on these remaining, similarly case-dispositive issues without prejudice.

an undergraduate before he left to pursue his musical dreams. Mr. Liles has been hailed as Billboard's Executive of the Year, named as one of Variety's "37 New Yorkers Making an Impact in Entertainment," and received France's highest honor, the "Medaille de la Ville de Paris Award." His career has been spent mentoring and promoting young women and men from all backgrounds, including but not limited to, artists, politicians, innovators, and content creators. Mr. Liles is a father to four children.

He now finds himself before this Court, defending himself against Plaintiff's false and frivolous allegations that he "raped" her twenty-three years ago. Plaintiff's claims are false. They are wildly different than the tale she told when she was fired by Def Jam, and they are barred as a matter of law by a settlement agreement and release that Plaintiff voluntarily entered into twenty years ago, expressly releasing Mr. Liles and covering "any and all possible claims" she may have had at the time. That release plainly bars the instant claims and requires their immediate dismissal with prejudice.

## BACKGROUND

Plaintiff alleges, in the instant Verified Amended Complaint ("Complaint"), that she became an employee of Defendant Universal Music Group ("UMG") in "approximately 1999," working as an executive assistant to an unnamed general manager. Am. Compl. ¶ 21.[2] She purportedly worked in the "[corporate defendant's] office in New York County, State of New York." Id. Mr. Liles served as the president of Def Jam Recordings at the time, and Plaintiff alleges that he worked at that same address. Id. ¶ 22.

According to Plaintiff, "soon after" she started working at UMG, Mr. Liles "began sexually harassing her" by making unspecified "derogatory and degrading comments based on her gender

---

[2] Contrary to Plaintiff's Complaint, Plaintiff did not begin working at Def Jam until March 2001.

2

regarding her body and appearance." *Id.* ¶ 23.  Plaintiff alleges that Mr. Liles purportedly "pressed his body" against her breasts and "grabbed [her] on the buttocks." *Id.* ¶ 24.

Plaintiff then alleges that, on one occasion in 2002, she "rebuffed" Mr. Liles's advances and he then sexually assaulted and raped her. *Id.* ¶ 25.  Aside from her conclusory statement, she offers no additional details about the date or any other conduct that she contends constituted the assault.  She does, however, allege that "*[a]t all relevant times* Kevin Liles was *acting in the course and scope of his employment as an employee* … of [UMG]" and "*used his position as an employee* [to] … rape" her. *Id.* ¶¶ 36, 38 (emphasis added).  She likewise alleges that "Liles used the facilities and locations of [UMG] to sexually abuse, assault, and rape" her. *Id*. at 39.

This is not the first time Plaintiff has falsely accused Mr. Liles.  One year after Plaintiff's April 2003 termination for cause by Def Jam, while represented by counsel, Plaintiff filed a complaint with the New York Division of Human Rights, alleging she had been sexually harassed by Mr. Liles.  Plaintiff did not allege then that Mr. Liles had ever raped her or grabbed her breasts or buttocks as she now alleges.  UMG denied Plaintiff's post-termination claims, but entered into a confidential settlement agreement with Plaintiff to resolve them for a nuisance fee (less than $50,000).  On November 30, 2005, Plaintiff and UMG executed the "Settlement Agreement and General Release" (the "Agreement").  *See* Ex. 1.  Plaintiff's Complaint makes no mention of this.

From the title of the Agreement onward, the intentions of the parties are clear and unambiguous.  The preamble states:

> "THIS AGREEMENT INCLUDES A **RELEASE OF ALL CLAIMS AND A WAIVER OF ALL RIGHTS TO MAKE A CLAIM** AGAINST UMG RECORDINGS, INC., … OR ANY OTHER EMPLOYEE OR REPRESENTATIVE OF UMG RECORDINGS, INC., INCLUDING, BUT NOT LIMITED TO **KEVIN LILES**, OR ANY RELATED

3

ENTITY OR JOINT VENTURE (COLLECTIVELY "UNIVERSAL" OR THE "UNIVERSAL RELEASEES" AS HERE DEFINED)."

*Id.* at 1 (emphasis added).  Mr. Liles is specifically mentioned by name, again, in the first paragraph, in which the parties made clear that there was no admission that Mr. Liles "engaged in any acts that in any way violated any legal rights" of Plaintiff, but the parties nonetheless entered into a "good faith settlement" of Plaintiff's claims and "all matters related thereto *and* all other matters between the parties up to and including the date of this Agreement."  *Id.* ¶ 1 (emphasis added).  He is also included in the definition of the term "Universal."  *Id.*[3]

Plaintiff acknowledged that the Agreement "constitutes the good faith settlement of the matter and the ending of [her] employment relationship … *and all other matters between the parties* up to and including the date of this Agreement."  *Id.* ¶ 1.

As consideration for the Agreement, UMG agreed not to divulge that Plaintiff was terminated for cause and to instead record her separation as a "resignation."  *Id.* ¶ 2.  Plaintiff also received a one-time payment and agreed not to reapply to UMG or Def Jam for a minimum of two years.  *Id.* ¶¶ 3-4.

UMG, for its part, received a global release (and covenant not to sue) for any and all claims against all "Universal RELEASEES," including Mr. Liles.  As the plain text of the Agreement makes clear, Plaintiff's release was negotiated for, unequivocal, and unambiguous:

> [Plaintiff] … *freely relinquishes and waives any and all possible claims against the Universal RELEASEES, including any and all judgments, claims, damages, or causes of action, or claims for attorneys' fees, which are known to her or reasonably should be*

---

[3] Though Mr. Liles was no longer employed by Def Jam and was unaware of the Agreement (nor a party to it), he is nevertheless plainly covered by its terms.

4

> ***known by her, which may have arisen from the beginning of time through the date of [the] execution of this Agreement.*** … [Plaintiff] specifically acknowledges that ***she waives and releases any and all claims.***

*Id.* ¶ 5(a) (emphasis added). Plaintiff also agreed to withdraw her New York Human Rights charge, and committed not to file any claim against any of the Universal RELEASEES, including Mr. Liles, alleging any form of "harassment" or "violation of [her] rights within the meaning of federal, state, or local law, or Constitution" or "***claiming any other injury*** arising from actions of Universal, or any of the Universal RELEASEES, up to and including the date of this Agreement." *Id.* ¶ 5(b) (emphasis added). Plaintiff further agreed "not to file any claim or bring any lawsuit, directly or indirectly, relating to any claim" released by the Agreement. *See id.* ¶ 6. Plaintiff attested she "carefully and thoroughly read each and every word" of the Agreement "in consultation with her attorney" and "fully under[stood] all of the provisions and effects of this Agreement" and had "thoroughly discussed all aspects of this Agreement with her attorney" after having "the opportunity to negotiate the terms of th[e] Agreement." *Id.* ¶ 8.

Plaintiff repeatedly attested that she was releasing "any claims," "any and all possible claims," and "any claims relating to rights under federal, state, or local laws" or arising out of any "other injury." *Id.* ¶¶ 5, 6. Her repeated release and waiver "include[d] all claims known to [Plaintiff] or that reasonably should be known by her" and states she would not bring claims for "***any other injury arising from actions*** of Universal, or ***any of the Universal RELEASEES***, up to and including the date of this Agreement." *Id.* ¶ 5(b).

Despite this clear release, and without even acknowledging that she had signed the Agreement, Plaintiff filed a complaint in the Supreme Court of the State of New York, County of New York against Mr. Liles and UMG. *See* ECF 1, Ex. A at 1. On April 2, 2025, Plaintiff filed

5

the instant Complaint, dropping several now-dissolved corporate defendants from this action.  *See id.* at 68.  The same day, Defendants removed this action to the Southern District of New York based on this Court's diversity jurisdiction over Plaintiff's claims.

## LEGAL STANDARD

When settlement terms are clear, a court properly considers them on a motion to dismiss. *See, e.g., Bensky v. Indyke*, 743 F. Supp. 3d 586, 592 (S.D.N.Y. 2024) (considering a release on a motion to dismiss because "Federal Rule of Evidence 201(b) permits courts to take judicial notice of an adjudicative fact 'that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'").[4]  On a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the" plaintiff's allegations then the complaint should be dismissed.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (internal quotation marks omitted)).

## ARGUMENT

Plaintiff's claims are barred by the unambiguously titled "Settlement Agreement and General Release" executed in 2005.  *See* Ex. 1.  She has not challenged the authenticity of the release, nor disputed the grounds upon which it was entered into.  Her only argument is as to the scope of the plain language of the Agreement.  As such, the Court may consider the Agreement at this stage of the litigation.  *See Doe 1 v. Gov't of United States Virgin Islands*, No. 23-CV-10301, 2025 WL 887439, at *2 (S.D.N.Y. Mar. 21, 2025) (taking judicial notice of a release on a motion

---

[4]   The parties agree that the Court should determine the scope of the release at the Motion to Dismiss stage.  *See* ECF No. 26 at 3 (Plaintiff's agreement).

to dismiss because plaintiffs did not "dispute the release's authenticity or that [they] signed it."). The terms of Plaintiff's release are case dispositive.

### A. The Release Unambiguously Covers Mr. Liles

There can be no dispute that Mr. Liles is covered by the Agreement. He is explicitly listed, in bold, as a releasee in the preamble, *see* Ex. 1 at 1, and is covered by the Agreement's definition of "Universal," which states that "all of the above entities or individuals [are] referred to hereinafter as 'Universal,'" *id*. Moreover, the key provisions of the Agreement all refer to the "Universal RELEASEES," plural, obviously including Mr. Liles. *See id.* ¶¶ 3, 5, 6.

### B. The Release Unambiguously Covers the Claims Alleged

In executing the Agreement, Plaintiff did not simply release the claims for which she had filed a human rights complaint. She broadly released "***any and all*** judgments, claims, damages, or causes of action, or claims for attorneys' fees, which are known to her or reasonably should be known by her, which may have arisen from the beginning of time through the date of [the] execution of this Agreement." *Id.* ¶ 5(a) (emphasis added). New York courts interpret that language to encompass the release of any possible claims. *See, e.g., Long v. O'Neill*, 126 A.D.3d 404, 407 (N.Y. App. Div. 2015) (finding the broad release of "all and/or any" claims "whether known or not known" to be evidence that the parties "intended to leave no loose ends"); *Williamson Cent. Sch. Dist. v. E & L Piping, Inc.*, 261 A.D.2d 937, 938 (N.Y. App. Div. 1999) ("By executing that general release, plaintiff not only released the disputed claims, but also those that could have been litigated."); *Leonzo v. First Unum Life Ins. co.*, No. 93-CV-0535, 1995 WL 505551, at *2 (S.D.N.Y. Aug. 23, 1995) (interpreting New York state law to find that a release of "all claims, demands, actions, and causes of action of every kind whatsoever … known or unknown" to be "clear, unambiguous and unequivocal" and dismissing plaintiff's complaint in its entirety).

7

Against this clear weight of authority, Plaintiff frivolously contends that the release does not cover her current claim because the Agreement refers, in places, to her employment dispute with UMG. She purportedly meant only to settle her workplace claims and this is—contrary to the allegations in her Complaint—somehow suddenly not a workplace claim. Her position has no basis in law or in fact for at least four reasons:

*First,* the plain language of the Agreement leaves no doubt as to the scope of the settlement. It states that the Agreement "constitutes the good faith settlement of the matter and the ending of the employment relationship between [Plaintiff] and Universal[5] and all matters related thereto ***and all other matters between the parties*** up to and including the date of this Agreement." Ex. 1 ¶ 1. And, of course, the document is entitled "SETTLEMENT AGREEMENT AND **GENERAL RELEASE.**" *Id.* at 1 **(**emphasis added). And the preamble states in all caps that: "**THIS AGREEMENT INCLUDES A RELEASE OF ALL CLAIMS AND A WAIVER OF ALL RIGHTS TO MAKE A CLAIM**[.]" *Id.* (emphasis added). The Agreement makes abundantly clear that it is designed to resolve not only any employment issues, but also all other claims between the parties.

That is reaffirmed by the specific language of the release. Plaintiff "freely relinquish[ed] … any and all possible claims against the Universal RELEASEES." *Id.* ¶ 5(a). Mr. Liles is expressly named as a "Universal RELEASEE," and his inclusion in the Agreement is in no way limited. There is no carve out. *See Barone v. Marone*, No. 04-CV-2001 (NRB), 2007 WL 4458118, at *6 (S.D.N.Y. Dec. 14, 2007) (noting that the plaintiff's "failure to include an express reservation of rights against [defendant] in his individual capacity" was evidence that the "parties did intend to release [defendant]").

---

[5] "Universal" is defined to include Mr. Liles.

The language of the covenant not to sue is equally broad. In that provision Plaintiff agreed that "she shall file no claim against Universal, or any of the Universal RELEASEES with any … court alleging discrimination or harassment, … or violation of [her] rights within the meaning of federal, state, or local law, or Constitution, … ***or claiming any other injury*** arising from actions of Universal, or any of the Universal RELEASEES, up to and including the date of this Agreement." Ex. 1 ¶ 5(b) (emphasis added).

This language stands in sharp contrast to the case cited by Plaintiff in her letters to this Court. In *Morales v. Solomon Management Co., LLC*, cited in Plaintiff's letters at ECF Nos. 26 and 26-1, the parties' release was limited to the underlying claim. 38 A.D.3d 381, 381 (N.Y. App. Div. 2007). The court in *Morales* noted that "where a release contains a recital of a particular claim, obligation or controversy and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, the general words of release are deemed to be limited thereby." *Id.* at 382. Here, by direct contrast, the language makes plain that it is designed to encompass far more than simply the employment issue. That is evident from the title ("General Release"), to the preamble ("**THIS AGREEMENT INCLUDES A RELEASE OF ALL CLAIMS AND A WAIVER OF ALL RIGHTS**"), to the description of the nature of the settlement ("and all other matters"), to the express language of the release and the covenant not to sue.[6] The release plainly covers "any and all possible claims … which are known to her or reasonably should be known by [Plaintiff], which may have arisen from the beginning of time through the date of [the] execution

---

[6] Under Plaintiff's construction, her agreement to release all claims "known to her or reasonably should be known by" her would be rendered superfluous if the release were limited only to claims she had already brought. In short, while the Agreement arose out of a complaint regarding Plaintiff's employment, the Agreement, itself, was not limited to settling just that claim or claims related to her employment.

of this Agreement[.]" Ex. 1 ¶ 5(a).  The Agreement clearly "intended to leave no loose ends," and as such bars any and all claims, including Plaintiff's claim here.  *See Long*, 126 A.D.3d at 407.

To be sure, when Plaintiff was engaged in negotiations with UMG over her supposed claims, she had every opportunity to seek to limit the scope of the release to conduct purportedly "within the scope" of Mr. Liles's employment, or to the specific claims underpinning the New York Human Rights charge itself, but she chose not to do so.  *See, e.g.*, *Treistman v. Ulster Cnty. Soc'y for Prevention of Cruelty to Animals*, 235 A.D.3d 1144, 1145 (N.Y. App. Div. 2025) (interpreting release limited to "claims … involving in any manner the factual allegations [in the 2018 action]" to cover any action "based in any way on the factual allegations underlying the 2018 claim").  She could have asked to carve out any individual tort claims against Mr. Liles, but she did not.  Instead, with the aid of counsel, Plaintiff agreed to waive any and all claims she might have had against Mr. Liles.

Notably, the phrase "including but not limited to" appears throughout the release, contradicting any claims that the scope of the release is "limited."  New York courts explicitly interpret this phrase to indicate that a release is not limited to the claims underpinning the settled charges.  *Stevens v. Town of Chenango*, 167 A.D.3d 1105, 1107 (N.Y. App. Div. 2018) (disagreeing with plaintiff that his release was limited to "the 2007 action" because the release "clearly and unambiguously states that it 'includes, but is not limited to,' the incident that led to the 2007 action").  Indeed, if Plaintiff's interpretation were correct, any general release could be evaded by a Plaintiff who fails to expressly disclose a supposed claim during settlement negotiations and then asserts that claim years later.  That is not and has never been the law.  A global release of any and all claims, in no way limited to or by subject matter, was part of the bargain for which Plaintiff received consideration.  That she and her counsel did not carve out her

known alleged rape claim at the time of the Agreement is not grounds to circumvent the unequivocal release decades later.

**Second**, Plaintiff's supposed intent is of no moment. "Where, as here, the language of a release is clear, effect will be given to the intention of the parties as indicated by the language employed and the fact that one of the parties may have intended something else is irrelevant." *LeMay v. HW Keeney Inc.*, 124 A.D.2d 1026, 1026 (N.Y. App. Div. 1986). Here, the face of the general release is clear, and Plaintiff is bound by it.

The New York Appellate Division's decision in *M.M. v. Church of Our Lady of the Annunciation*, is instructive. 162 N.Y.S.3d 598, 600-01 (N.Y. App. Div. 2022). There, the plaintiff, M.M., purportedly suffered years of sexual abuse by his priest. *Id.* After the priest was convicted in Massachusetts on sexual abuse charges, M.M. requested reimbursement from the Catholic Church for counseling expenses. *Id.* He entered into a settlement agreement, was compensated, and broadly released "any and all claims … of any nature whatsoever, in law or equity, known or unknown arising from or by reason of any matter, act, omission, cause or thing whatsoever, whether known or unknown, foreseen or unforeseen, including without limitation any and all claims by or on behalf of [plaintiff] that [defendants] have ever committed[.]" *Id.* Years later, M.M. commenced action pursuant to a revival statute, arguing that he "mistakenly believed" his release "only encompassed his claim for compensation for counseling expenses as opposed to claims for future pain and suffering." *Id.* The court disagreed, holding that the plain language of the release "encompass[ed] all claims that plaintiff [sought] to pursue." *Id.* The *M.M.* court noted that "any mistake [about the scope of the release] by plaintiff was a mere unilateral mistake … with respect to the meaning and effect of the release … [and] does not constitute an adequate basis for invalidating it." *Id.* (cleaned up).

***Third***, Plaintiff's argument is directly contradicted by her own allegations. Her claims against Mr. Liles are unmistakably framed as occurring within the scope of his employment: "[a]t all relevant times, Kevin Liles was ***acting in the course and scope of his employment as an employee*** ... of UMG" and "used his position as an employee" of UMG to "rape" her. Am. Compl. ¶¶ 36, 38 (emphasis added). In fact, her claims against UMG were entirely predicated on her representations to this Court that this was a workplace incident, in the scope of Mr. Liles's duties. Federal Rule of Civil Procedure 12 requires this Court to "accept as true all of the allegations contained in a complaint[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[7] Here those allegations preclude Plaintiff's efforts to evade the settlement agreement by now claiming that Mr. Liles's alleged conduct was, in fact, outside the scope of his employment. Plaintiff's willingness to dismiss her harassment claims against Mr. Liles as "within the scope of employment," and to dismiss UMG altogether, only underscores the untenability of her position. *See* ECF Nos. 24, 26. Her attempt to now draw such arbitrary lines is nonsensical. It is also immaterial, as the plain language of the Agreement is in no way limited to claims within the scope of Mr. Liles's employment, as explained above.

***Fourth***, Plaintiff's suggestion that she was seeking to preserve a civil sexual assault claim against Mr. Liles is belied by her own conduct. If Plaintiff truly believed she had such a claim, and wished to preserve it in November 2005 when she signed the Agreement, she would have been

---

[7]   Plaintiff's attempted about-face on her representations to the Court that this was a workplace incident for which UMG bears responsibility only magnifies the fundamental bad faith behind Plaintiff's efforts to maintain her claim in the face of the Agreement. Nor should the court credit these directly contradictory assertions. *See Colliton v. Cravath, Swaine & Moore LLP,* No. 08-CV-0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes [her] statement of the facts in order to respond to the defendant['s] motion to dismiss … [and] directly contradicts the facts set forth in [her] original complaint a court is authorized to accept the facts described in the original complaint as true.") (quoting *Wallace v. New York City Dep't of Corr.,* 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (internal quotation marks omitted).

12

required to file any suit three years after the date of the alleged incident under the then-applicable statute of limitations. While Plaintiff does not allege a specific date, she does contend that the alleged assault occurred in 2002. The fact that she filed no such claim in 2005—the same year she settled and released *all* of her claims against UMG and Mr. Liles—evidences the fact that either (i) her assault allegation is completely made up (as is the case), or (ii) she understood that any and all claims known to her were included in the Agreement and she chose to release her claim. *LeMay*, 124 A.D.2d at 1026 ("Since at the time he executed the release plaintiff was aware of the injuries for which he now seeks compensation and failed to exclude his personal injury claim from the embrace of the release, the release bars the instant lawsuit and the complaint must be dismissed[.]").[8]

Plaintiff's Amended Complaint is a frivolous abuse of the legal process and there is no basis to continue pursuing her claims. Based on the plain language of the release, her claims must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Amended Complaint with prejudice.

Dated: Washington, DC
       May 16, 2025

*/s/ Krystal C. Durham*

---

[8] In fact, Plaintiff agreed "not to file any claim or bring any lawsuit, directly or indirectly." Ex. 1 ¶ 6. Plaintiff has violated that agreement by bringing the present lawsuit. Plaintiff acknowledged and agreed that "any disclosure of information in violation of this confidentiality agreement may cause Universal substantial injury and damage, the actual amount of which may be impractical or extremely difficult to determine. Accordingly, [Plaintiff] agrees that if she violates paragraph '6' of this Agreement, Universal shall be entitled to damages proved to have resulted from the disclosure." *Id.* ¶ 8. Mr. Liles is undoubtedly included in the definition of "Universal" and has damages as the result of Plaintiff's frivolous lawsuit and the conduct of her counsel.

        Joseph M. Terry (*pro hac vice*)
        Krystal C. Durham (#5157623)
        Allison S. Eisen (#5689682)
        William Searcy (*pro hac vice*)
        WILLIAMS & CONNOLLY LLP
        For Matters in New York:
            650 Fifth Avenue, Suite 1500
            New York, NY 10019
        680 Maine Avenue, S.W.
        Washington, DC 20024
        (202) 434-5000
        jterry@wc.com
        kdurham@wc.com
        aeisen@wc.com
        wsearcy@wc.com

        *Attorneys for Defendant Kevin Wesley Liles*

## CERTIFICATE OF SERVICE

On May 16, 2025, I caused a copy of the foregoing pleading to be filed electronically with the Court using the Court's CM/ECF system, which will transmit a notice of electronic filing to all counsel of record in this action.

*/s/ Krystal C. Durham*
Krystal C. Durham

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to the Local Rules of the Southern District of New York, that the foregoing Memorandum in Support of Defendant Kevin Liles's Motion to Dismiss complies with the word-count limitations set by this Court, and contains 4,342 words.

*/s/ Krystal C. Durham*
Krystal C. Durham
