UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PCVA JANE DOE,                                          Case No.: 1:25-cv-02745

                                   Plaintiff,

-against-

UMG RECORDINGS, INC. and
KEVIN WESLEY LILES,

                                   Defendants.

---

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KEVIN WESLEY LILES'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………..i

TABLE OF AUTHORITIES………………………………………………………………ii

I.    PRELIMINARY STATEMENT……………………………………………………1

II.    RELEVANT FACTS AND BACKGROUND………………………………………2

III.    LEGAL ARGUMENT……………………………………………………….....5

        a.   Motion to Dismiss Standard…………………………………………………5

        b.   The Interpretation of General Releases Under New York Law……………………5

        c.   Each New York Appellate Department Has Restricted Broad Releases……………9

        d.   Defendant's Remaining Arguments Are Unavailing……………………………..15

IV.    CONCLUSION……………………………………………………………....19

        CERTIFICATE OF SERVICE…………………………………………………..21

        WORD COUNT CERTIFICATION…………………………………………………22

## TABLE OF AUTHORITIES

**Cases**

*Abdulla v Gross,* ............................................................................................ 14
    124 AD3d 1255, 1275 [4th Dept 2015]

*Actrade Fin. Tech., Ltd.,* ................................................................................. 7
    424 BR 59, 69 [Bankr SDNY 2009]

*Adorno v Correctional Services Corp.,* ......................................................... 16
    312 F Supp 2d 505, 517 [SDNY 2004]

*Alcantara v 603-607 Realty Assoc,* ........................................................... 6, 11
    273 AD2d 329, 330 [2d Dept 2000]

*Barris v Hamilton,* ......................................................................................... 18
    1999 WL 311813 at *2 [S.D.N.Y. May 17, 1999]

*Barshay v Naithani,* ......................................................................................... 7
    2023 WL 2051170 at *9 [SDNY Feb. 16, 2023], *affd,* 23-382, 2023 WL 8708424
    [2d Cir Dec. 18, 2023]

*B.B. & S. Treated Lbr. Co. v Groundwater Tech., Inc.,* .................................. 6
    256 AD2d 430, 432 [2d Dept 1998]

*Bernadotte v N.Y. Hosp. Med. Ctr. of Queens,* ........................................... 18
    2014 WL 808013 at *5 [E.D.N.Y. Feb. 28, 2014]

*Bugel v WPS Niagara Properties, Inc.,* ....................................................... 13
    19 AD3d 1081 [4th Dept 2005]

*Cahill v Regan,* ................................................................................................ 6
    157 N.E.2d 505, 509 (1959)

*Camperlino v Bargabos,* ................................................................................ 14
    96 AD3d 1582, 1583-84 [4th Dept 2012])

*Campos v Aegis Realty Mgt. Corp.,* ................................................................ 7
    020 WL 433356 at *9 [SDNY Jan. 28, 2020]

*Colliton v Cravath, Swaine & Moore LLP,* .................................................. 18
    2008 WL 4386764 [SDNY Sept. 24, 2008], *affd,* 356 Fed Appx 535 [2d Cir 2009]

*Cooper v Pate,* .................................................................................................. 5
    378 US 546, 546 [1964]

*Corzatt v Taylor.*, ................................................................................................ 13
    126 AD3d 1505, 1505 [4th Dept 2015]

*Enock v Natl. Westminster Bankcorp, Inc.,* ........................................................ 10
    226 AD2d 235 [1st Dept 1996]

*Escobar v Spartan Assemblies, Inc.,* ................................................................... 16
    267 AD2d 272, 273 [2d Dept 1999]

*Gyabaah v Rivlab Transp. Corp.,* ......................................................................... 5
    102 A.D.3d 451, 451 (1st Dept. 2013)

*Hall Enterprises, Inc. v Liberty Mgt. & Const., Ltd,.* .......................................... 12
    37 AD3d 658, 659 [2d Dept 2007]

*Haskell v Miller,* ................................................................................................... 6
    221 AD 48, 49 [1st Dept 1927] *affd,* 246 NY 618 [1927]

*Hendricks v 333 Bayville Ave. Rest. Corp.,* ......................................................... 16
    260 AD2d 545, 546 [2d Dept 1999]

*Herman v Malamed,* .............................................................................................. 8
    110 AD2d 575 [1st Dept 1985]

*Jackson v New York Univ. Downtown Hosp.,* ....................................................... 17
    69 AD3d 801, 801 [2d Dept 2010

*Johansmeyer v New York City Dept. of Ed.,* ................................................. 15, 17
    165 A.D.3d 634, 635 (2d Dept. 2018)

*Joshua S. by Paula S. v Casey,* ............................................................................. 16
    206 AD2d 839, 839 [4th Dept 1994]

*Judith M. v Sisters of Charity Hosp.,* .................................................................... 15
    93 NY2d 932, 933 [1999]

*King v City of New York,* ............................................................................. 9, 10, 15
    234 AD3d 636, 636 [1st Dept 2025]

*Koren v Weihs*, ...................................................................................................... 16
    190 AD2d 560, 561 [1st Dept 1993]

*Kovalchik v City of New York,* .............................................................................. 16
    09-CV-4546 RA, 2014 WL 4652478 at *10 [SDNY Sept. 18, 2014]

*Mangini v McClurg,* ...........................................................................................................1, 6, 7, 9
        24 NY2d 556, 562 [1969]

*Matter of Kemp v Perales,* ...................................................................................................10
        199 AD2d 320 [2d Dept 1993]

*Maxwell Partners, L.L.C. v Bldg. Studio, LLP,* ....................................................................10
        32 AD3d 321, 324 [1st Dept 2006]

*Mazzurco v PII Sam, LLC,* ......................................................................................................8
        153 AD3d 1341 [2d Dept 2017]

*Meyer v Fanelli,* ......................................................................................................................6
        .266 AD2d 361, 362 [2d Dept 1999]

*Mitchell v Mitchell,* .................................................................................................................6
        170 AD 452, 456 [1st Dept 1915]

*Morales v Solomon Mgmt. Co., LLC,* ...............................................................................1, 6, 8
        32 N.Y.S.2d 195, 196 (1st Dept. 2007)

*N.X. v Cabrini Med. Ctr.,* ......................................................................................................15
        97 NY2d 247, 251 [2002]

*Perritano v Town of Mamaroneck,* ...................................................................................10, 11
        126 AD2d 623, 624 [2d Dept 1987]

*Rafferty v Hempstead Union Free School Dist.,* ..................................................................17
        2020 WL 7024311 at *7 [EDNY Nov. 30, 2020]

*Ross v Mitsui Fudosan, Inc.,* ................................................................................................16
        2 F Supp 2d 522, 531 [SDNY 1998])

*Rotondi v Drewes,* ..................................................................................................................11
        31 AD3d 734, 735 [2d Dept 2006]

*Rubinstein v Rubinstein,* .........................................................................................................6
        109 NYS2d 725, 731-32 [Sup Ct 1951] *affd,* 279 AD 1073  [1st Dept 1952],
        *affd,* 305 NY 746 [1953]

*Russell v Hollister Corp.,* ......................................................................................................18
        2014 WL 2723236 at *4 [SDNY June 17, 2014]

*Salahuddin v Cuomo,* ..............................................................................................................5
        861 F.2d 40, 42 [2d Cir. 1988]

*Salewski v Music,* ........................................................................................................13
    150 AD3d 1353, 1353 [3d Dept 2017]

*Schaefer,* .......................................................................................................................6
    18 NY2d 314, 317 [1966]

*Simon v Simon,* .....................................................................................................6, 10
    274 AD 447, 449 [1st Dept 1948]

*Smith v. City of New York,* ....................................................................................1, 5
    236 A.D.3d 414 (1st Dept. 2025)

*Strauss v New York State Dept. of Educ,* ...............................................................3
    26 AD3d 67 [3d Dept 2005]

*W.W.W. Associates, Inc. v Giancontieri,* ...............................................................6
    566 N.E.2d 639, 642 (1990)

*In re WorldCom Inc.,* ...............................................................................................7
    296 BR 115, 123 [Bankr SDNY 2003]

*Zilinskas v Westinghouse Elec. Corp.,* ...................................................................12
    248 AD2d 777, 777-78 [3d Dept 1998]

## **Statutes**

Human Rights Law of the New York State, Section 296 .........................................3

N.Y.C. Admin. Code §§ 10-1104 ..........................................................................16

New York Executive Law § 290 ..............................................................................2

## **Secondary Sources**

Beverly Engel L.M.F.T. Why Don't Victims of Sexual Harassment Come Forward Sooner?, PSYCHOLOGY TODAY, Nov. 16, 2017 ...............................................................18, 19

## PRELIMINARY STATEMENT

Liles and his team have promoted a narrative since the outset of this case: that Plaintiff is a liar, represented by unscrupulous attorneys, jumping on the so-called bandwagon of sex abuse litigation targeting wealthy, high-profile figures in the music industry. That is why Liles "Preliminary Statement" is simply his resume in narrative form, touting his accomplishments and status in the music industry in what is plainly an attempt to leverage his fame and prestige against the veracity of Plaintiff's claims.  This exact type of distortion is why so many victims never come forward. Regardless, Liles's narrative is false and does nothing to address the merits of Plaintiff's legal arguments or the extensive body of New York case law cited below.

The only facts that matter here are those pled by Plaintiff in her Complaint and those which are contained in the four corners of the subject release, not Liles's "honorary degree from Morgan State University." *See, Durham, "*Memorandum in Support of Defendant Kevin Wesley Liles's Motion To Dismiss," at pg. 4. With respect to those facts, Plaintiff maintains that the four corners of the subject release make clear that she released her claims against UMG Recordings, Inc., ("UMG"), as well as any employment related claims against Liles arising in the course and scope of his employment (including discrimination, hostile work environment, retaliation, etc.). However, the release did not contemplate Plaintiff's individual claims against Liles for the violent sexual assault he committed.

It is black letter law of this State that the general language in a release may be limited by other language contained in the release. *See, e.g., Morales v. Solomon Mgmt. Co., LLC*, 832 N.Y.S.2d 195, 196 (1st Dept. 2007). For that reason, releases are read as a whole to determine their purpose and intent. *See, Smith v. City of New York*, 236 A.D.3d 414 (1st Dept. 2025). Thus, Defendant's cherry-picking of all the broad phrases in the subject release is unhelpful and unpersuasive. As was stated by New York's highest court in *Mangini v McClurg*, 24 NY2d 556,

1

562 [1969], ". . . ___the cases are many in which the release has been avoided with respect to___ ___uncontemplated transactions despite the generality of the language in the release form___." (emphasis added). Toward that end, the trove of New York appellate cases cited below—where similarly general language in a prior release failed to bar a plaintiff's claim—serves as conclusive evidence that Plaintiff's arguments are not only neither frivolous nor made in bad faith, but are also compelling. Thus, we respectfully request that this Court deny Defendant's motion to dismiss.

## RELEVANT FACTS AND BACKGROUND

Plaintiff PCVA Jane Doe began her employment with UMG,[1] in approximately 1999 and became the executive assistant to the general manager, working at UMG's office in New York County, New York. *Franken* Decl., **Ex. "1"** at ¶ 21. Liles was Plaintiff's supervisor and an executive member of UMG, working at their New York Office. *Id.* ¶ 22. Shortly after Plaintiff's employment began, Liles began sexually harassing her, including making derogatory and degrading comments based on her gender regarding her body and appearance. *Id.* ¶ 23. Between 2000 and 2002, the abuse at work escalated. *Id.* ¶ 24. Ultimately, in approximately 2002, Liles physically assaulted and raped Plaintiff at UMG's offices. *Id.* at ¶ 25.

In June of 2004, Plaintiff filed a complaint with New York State Division of Human Rights ("NYSHR Complaint"), an agency of the executive department responsible for, *inter alia*, eliminating and preventing employment discrimination. *Franken* Decl., **Ex. "2"**; *See,* New York Executive Law § 290. Plaintiff's NYSHR Complaint named Universal Music Group[2] and Kevin Liles as Aider and Abettor. *Franken* Decl., **Ex. "2"** at 1. She alleged that, when she began her employment, UMG's President (Liles), began sexually harassing her. *Id.* In her NYSHR

---

[1] Plaintiff filed a voluntarily dismissal as to Defendant UMG which was granted on 5/19/25. ECF Doc. No. 33.

[2] It is presumed that Plaintiff intended to name Defendant, UMG.

Complaint, Plaintiff details multiple instances of workplace misconduct on the part of Liles. *Id.* Plaintiff also alleges that she complained to multiple supervisors and the director of human resources at UMG regarding Liles's inappropriate conduct, however, management took no action against Liles. *Id.* at 1-2. Plaintiff alleged that she was fired in 2003 in retaliation for complaints against Liles. *Id.* at 2. Plaintiff's NYSHR Complaint charged UMG and Liles as an Aider and Abettor with ". . . an unlawful and discriminatory practice by denying [her] equal terms conditions and privileges of employment because of [her] sex an in retaliation for [her] having opposed discrimination, in violation of the Human Rights Law of the New York State, Section 296." *Id.* at pg. 2. There is no dispute that Plaintiff did not disclose the rape to the NYSHR or to UMG at this time.

In 2005, Plaintiff entered into a settlement agreement with UMG to resolve her employment claims and NYSHR Complaint. *Franken* Decl., **Ex. "3"**. At the outset of the release, Kevin Liles is identified specifically as an "employee/representative of UMG Recordings Inc." *Id.* at 1. Further, the plain language of the three introductory recitals of the general release entered into by Plaintiff and UMG frame the scope of the release and make clear it was related solely to the "employment relationship" and her claims for wrongful termination:

> WHEREAS, Mitzila Gallardo ("GALLARDO") ***was employed by the Island/Def Jam Music Group***, a division of UMG Recordings Inc., and with all of the above entities or individuals referred to hereinafter as "Universal," ***and her employment relationship with "Universal" has ended***; and

> WHEREAS, GALLARDO filed a charge with the ***New York State Division of Human Rights, Charge No. 230943/03***;[3] and

---

[3] As referenced above, Plaintiff's NYSHR Complaint is explicitly and solely limited to employment claims against UMG and Kevin Liles. Further, as an "aider and abettor," Liles's liability was premised solely on his aiding and abetting UMG's violations, *not his own conduct. See, Strauss v New York State Dept. of Educ.*, 26 AD3d 67 [3d Dept 2005] (holding that individuals cannot be liable for aiding and abetting their own violations of the Human Rights Law).

WHEREAS, GALLARDO and Universal are desirous of resolving the case and all other matters between them *concerning the employment relationship and the termination of the employment relationship*. (*Id.* at pg. 2) (emphasis added).

In addition to all three recital paragraphs above, throughout the remainder of the release, the language continuously refers to the employment relationship. For example, Liles places a heavy emphasis on the broad language of Paragraph 5(a)-(b). However, despite the use of the phrase "any and all claims," the specific examples of the causes of action and statutes listed in Paragraphs 5(a)-(b) are all employment claims – none of the causes of action relate to individual tortious conduct conducted outside the scope of employment:

> . . . any claims relating to wrongful or discriminatory treatment by Universal, or the Universal RELEASEES, *with respect to her employment with Universal*, and any claims relating to rights under federal, state or local laws, including but not limited to, *Title VII of the Civil Rights Act of 1964*,[4] as amended . . . and any claims of *breach of contract, tortious interference with contract; tortious interference with prospective contractual relationship; fraud; fraudulent inducement... Id.* at ¶5(a) (emphasis added)

> … she shall file no claim against Universal, or any of the Universal RELEASEES with any federal, state or local agency, arbitration association, or court alleging discrimination or harassment, including but not limited to, claims of *discrimination or harassment on the basis of disability, national origin, age, sex, pregnancy, race, color, creed, religion, marital status*, or any other form of illegal discrimination, harassment, or retaliation, or violation of his rights within the meaning of federal, state, or local law, or Constitution, including but not limited to, *Title VII of the Civil Rights Act of 1964*, as amended, or *alleging breach of contract, tortious interference with contractual relationship, tortious interference with prospective contractual relationship; fraud; fraudulent inducement*. . . *Id.* at ¶5(b) (emphasis added)

While the release includes broad "any and all claims" language in addition to the employment specific language above, the release explicitly states that "… *all parts of this*

---

[4] Title VII of the Civil Rights Act of 1964 protects employees from unlawful discrimination in the workplace. *See generally,* 52 Am. Jur. Proof of Facts 3d 1 (Originally published in 1999).

*Agreement shall in all cases be construed as a whole*. . .". *Id*. at ¶ 10 (emphasis added). Towards

that end, as detailed below, the cases are legion where New York courts, in interpreting a broad

release as a whole, have determined the scope to be limited to a particular category of claims.

Here, while Plaintiff released her employment related claims, and thus all claims against UMG

related to that employment, she did not release claims against Kevin Liles for his tortious (and

criminal) sexual assault.

## **LEGAL ARGUMENT**

### I.    **Motion To Dismiss Standard**

The principal function of the complaint is to give the adverse parties fair notice of the

claims asserted to enable them to answer and prepare for trial. *See*, *Salahuddin v. Cuomo*, 861 F.2d

40, 42 (2d Cir. 1988). "Dismissal . . . is usually reserved for those cases in which the complaint is

so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised." *Id.* When considering a motion to dismiss, all allegations in the complaint must be

taken as true. *Cooper v Pate*, 378 US 546, 546 [1964]. Further, "[w]hen the court chooses to

dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of

Rule 8." *Salahuddin*, 861 F.2d at 42.

### II.    **The Interpretation of General Releases Under New York Law**

In New York,[5] a general release is governed by principles of contract law. *Gyabaah v.*

*Rivlab Transp. Corp.*, 102 A.D.3d 451, 451 (1st Dept. 2013). "Like any contract, a release must be

'read as a whole to determine its purpose and intent…'" *Smith v. City of New York*, 236 A.D.3d

---

[5] The plain language of the subject release states that it is to be interpreted and enforced under New York State Law which Defendant does not dispute. *See, Franken* Decl. **Ex. "3"** at ¶ 10.

414 (1st Dept. 2025) (quoting *W.W.W. Associates, Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (1990)). As stated by the New York Court of Appeals in *In re Schaefer*, 18 NY2d 314, 317 [1966], "[t]he meaning and scope of a release must be determined within the context of the controversy being settled." (citing *Cahill v. Regan*, 157 N.E.2d 505, 509 (1959)). Even with a general release, "[t]he meaning and extent . . . depend upon the controversy being settled and the purpose for which it is given . . .". *Alcantara v 603-607 Realty Assoc.*, 273 AD2d 329, 330 [2d Dept 2000]; *see also, Meyer v Fanelli*, 266 AD2d 361, 362 [2d Dept 1999] (holding that the defendant failed to establish that the prior release settling a personal injury claim was intended to relieve him of his obligation to repay loans made by the plaintiff); *B.B. & S. Treated Lbr. Co. v Groundwater Tech., Inc.,* 256 AD2d 430, 432 [2d Dept 1998] (holding that a prior general release did not bar claims arising in an entirely different context). Further, ". . . a release may not be read to cover matters which the parties did not desire or intend to dispose of." *Morales*, at 197 (quoting *Cahill v. Regan*, 5 NY2d 292, 299 [1959].

In the seminal case of *Mangini*, 24 NY2d at 562, the Court of Appeals recognized that, ". . . while it has been held that an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement, ***the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form***." (emphasis added) (citing, *Cahill v. Regan*, 5 N.Y.2d at 299; *Mitchell v. Mitchell*, 170 AD 452, 456 [1st Dept 1915]; *Simon v Simon*, 274 AD 447, 449 [1st Dept 1948]; *Haskell v. Miller*, 221 AD 48, 49 [1st Dept 1927], *affd*, 246 NY 618 [1927]; *Rubinstein v. Rubinstein*, 109 NYS2d 725, 731-32 [Sup Ct 1951], *affd*, 279 AD 1073 [1st Dept 1952], *affd*, 305 NY 746 [1953]; 49 N.Y.Jur., Release and Discharge, ss 19, 31, 34, 35, 46).

In line with that authority, this District has acknowledged that the general language contained in a release must be treated differently when interpreted under New York state law, as in the case here. *See, In re Actrade Fin. Tech., Ltd.*, 424 BR 59, 69 [Bankr SDNY 2009] ("There is no question that the Release in paragraph 11 of the AmPad and PUSA Settlement employs language that is general and broad and ***when read in isolation covers all claims against the Sureties***. ***This general language would be conclusive but for the principle of New York law that a release, general on its face, will be limited to those claims within the contemplation of the parties at the time***.") (emphasis added); *see also, In re WorldCom, Inc.*, 296 BR 115, 123 [Bankr SDNY 2003] ("New York [state] courts have recognized that under certain circumstances, broad releases may be avoided with respect to uncontemplated transactions.") (citing *Mangini*, 24 NY2d at 563).

As aptly stated by this District in *Barshay v Naithani*, 2023 WL 2051170 at *9 [SDNY Feb. 16, 2023], *affd*, 23-382, 2023 WL 8708424 [2d Cir Dec. 18, 2023], there is a ". . . realistic recognition that releases contain standardized, even ritualistic[ ] language[.]" (internal quotation marks omitted) (citing *Mangini*, 24 NY2d at 562). Based on that understanding, this District acknowledged that "[a]ccordingly, ***courts applying New York law have more carefully scrutinized the context and language used in releases to ascertain whether a given dispute or transaction falls within a given release's scope***." *Id.* (emphasis added); *see also, Campos v Aegis Realty Mgt. Corp.*, 2020 WL 433356 at *9 [SDNY Jan. 28, 2020] ("On the record before it, the Court cannot find that Plaintiff's claims were contemplated by any of the parties to the Third-Party Release when the Plan was ordered by the Bankruptcy Court, making it less likely that such claims would be covered by the Third-Party Release.").

Thus, New York appellate courts have made clear that "where a release contains a recital of a particular claim, obligation or controversy and there is nothing on the face of the instrument other than general words of release to show that anything more than the matters particularly specified was intended to be discharged, ***the general words of release <u>are deemed to be limited thereby</u>***." *Morales*, 832 N.Y.S.2d at 196 (internal citations and quotations omitted) (emphasis added). Stated differently, general language such as "any and all claims" is limited by the intended scope of the release and the context in which it was given – these are not magic words which bestow complete immunity to a released party.

In determining the scope of a release which includes broad encompassing language, New York Courts will look at the recitals to determine the categories of claims intended for release:

> It is well settled that a 'release may contain specific recitals as to the claims being released, and **yet conclude with an omnibus clause to the effect that the releasor releases and discharges all claims and demands whatsoever which he or his heirs, executors, administrators, or assigns have or may have against the release**. In such situations, the courts have often applied the rule of *ejusdem generis*, and held that the general words of a release are limited by the recital of a particular claim....' (19 NY Jur.2d, Compromise, Accord, and Release, § 83) Thus, if from the language of the instrument, it appears that the release is to be limited to certain claims, demands or obligations, then the release will be operative as to those matters only. (*Lanni v. Smith*, 89 AD2d 782, 782 [4th Dept 1982]).

*Herman v Malamed*, 110 AD2d 575 [1st Dept 1985] (emphasis added); *see also, Mazzurco v PII Sam, LLC,* 153 AD3d 1341 [2d Dept 2017] (holding that the release did not conclusively dispose of plaintiff's claims and noting that, "[i]f the recitals in the release appear to limit the release to only certain claims, demands, or obligations, the release will operate only as to those matters.") (internal citations omitted).

Towards that end, the cases cited below from each of the four appellate departments in New York, demonstrate that the cases truly are "***many***" in which the release has been avoided as

to uncontemplated transactions despite general, overly broad language. *Mangini*, 24 NY2d at 562 (internal citations omitted).

### III.    Each New York Appellate Department Has Restricted Broad Releases

**<u>First Department Appellate Division</u>**

In *King v City of New York*, 234 AD3d 636, 636 [1st Dept 2025], the First Department Appellation Division dealt with strikingly similar facts and language as the release at issue here. In that case, plaintiff settled a federal action against her employer alleging various employment-related claims of discrimination. *Id.* The settlement agreement referenced a general release[6] which provided that ". . . plaintiff was releasing any and all claims related to the allegations in the pleadings in the federal action, as well as any right or claim under the Federal Age Discrimination in Employment Act, 'and' '(iii) *any and all other liability, claims or rights of action that may exist or arise up to and including the date*' the release was executed." *Id.* Despite the broad, encompassing language of the release, the First Department held that "[t]he settlement documents . . . when read as a whole, established that the parties intended the broad language in subpart three of the release to be limited to the recital of claims stated in the release, namely, claims that could have been brought in connection with plaintiff's federal employment discrimination action, or under the Age Discrimination in Employment Act, provided such a claim arose prior to the

---

[6] The Appellate Division in *King v City of New York*, 234 AD3d at 637 also held that, in interpreting the scope of the general release, "[t]he settlement agreement [was] properly read in conjunction with the release *particularly where the release expressly refers to the settlement agreement*." (citing *Bank Leumi Tr. Co. of New York v Toms*, 117 AD3d 555 [1st Dept 2014]) (emphasis added); *see also*, *Bank Leumi Tr. Co. of New York,* 117 AD3d at 556 (holding that the lower court properly read the general release in conjunction with the stipulation of settlement in determining the scope of the subject release). Similarly, here, the release must be read in conjunction with Plaintiff's NYSHR Complaint as it is explicitly referenced by the second recital paragraph of the release. *See, Franken* Decl. **Ex. "3"** at pg. 1. When both documents are read in conjunction as a whole, it is clear that the release was not meant to cover Liles's rape of Plaintiff, but instead, was limited to employment-related claims – the only claims that would ever be addressed by a NYSHR complaint.

execution of the release." *Id.* (internal citations omitted); *see also, Maxwell Partners, L.L.C. v Bldg. Studio, LLP,* 32 AD3d 321, 324 [1st Dept 2006] (holding that the release at issue "unquestionably contains limiting language" thereby limiting the application of the generalized language that follows); *Perritano v Town of Mamaroneck*, 126 AD2d 623, 624 [2d Dept 1987] ("It has been observed that 'if from the recitals therein or otherwise, it appears that the release is to be limited to only particular claims, demands, or obligations, the instrument will be operative as to those matters alone and will not release other claims, demands or obligations.'") (quoting 49 N.Y.Jur., Release and Discharge § 33, p. 405).

In *Simon v Simon*, 274 AD 447, 448-49 [1st Dept 1948], the parties were litigating a divorce and a release was entered into in full settlement regarding plaintiff's interest in a co-partnership business with her husband, alimony, counsel fees and ". . . ***all claims or demands of any description whatsoever which she may now have or hereafter may have against the husband***." (internal quotation marks omitted). Thereafter, the wife brought an action to recover items of personal property in the possession of defendant-husband. *Id*. at 449. In reversing the trial court and ordering a new trial, the Appellate Division stated ". . . while the release was general in form, we hold that, in the absence of a showing that the title to these articles was actually in question at the time the release was given, it cannot be held as a matter of law, that any claims based on such title were barred." *Id*; *see also, In Enock v Natl. Westminster Bankcorp, Inc.*, 226 AD2d 235 [1st Dept 1996] (holding that a prior release did not bar the plaintiff's claim for the recovery of a signing bonus from his prior employer).

**Second Department Appellate Division**

In *Matter of Kemp v Perales,* 199 AD2d 320 [2d Dept 1993], the Second Department Appellate Division, arrived at a similar conclusion as the First Department in *King* regarding broad

language contained in a release. In that case, plaintiff commenced an Article 78 Proceeding, which was initially dismissed by the trial court as barred by a prior release. *Id*. at 321. The Appellate Division reversed, holding that, despite ". . . a general release of all claims arising out of the facts and circumstances alleged in the [prior] proceeding . . . we find that the release is operative ***only as to the specific claim raised in the prior proceeding and does not bar the instant proceeding***." *Id.* at 321-22 (emphasis added); *see also*, *Perritano v Town of Mamaroneck*, 126 AD2d 623, 624 [2d Dept 1987] (upholding the denial of a motion to dismiss based on a general release because " it is undisputed that the release involved was executed within the context of a prior unrelated defamation suit in which various parties, including the defendants herein, had been named as parties to the release.").

In *Rotondi v Drewes*, 31 AD3d 734, 735 [2d Dept 2006], plaintiff brought a claim for personal injuries against her landlord after settling a small claims action against the same defendant stemming from a dispute over her security deposit. The recital in the release stated that the parties released each other "from claims arising out of the 'the renting of the premises ... or the occupancy thereof.'" *Id*. In reversing the decision of the lower court, the Appellate Division held that "the release is limited by its recitals to the prior landlord-tenant dispute, and the circumstances surrounding its execution support the plaintiff's contention that it was not intended to release the defendant from liability in this personal injury action." *Id*. at 736.

In *Alcantara v 603-607 Realty Assoc.,* 273 AD2d 329, 329 [2d Dept 2000], defendants moved to dismiss plaintiff's cause of action for personal injuries based on a previously executed release settling plaintiff's claims against defendants in an unrelated prior accident. In upholding the trial court's denial of defendant's motion to dismiss, the Appellate Division held that ". . . the release, executed in the context of settling the infant plaintiff's claim for arm injuries arising from

11

a 1993 accident, clearly was not meant to relieve the appellants of their potential liability for an eye injury which the infant plaintiff allegedly sustained in a completely unrelated accident." *Id*. at 330.

In *Hall Enterprises, Inc. v Liberty Mgt. & Const., Ltd.*, 37 AD3d 658, 659 [2d Dept 2007] defendants moved for pre-discovery summary judgment on the issue of whether a prior release barred plaintiff's present claims. In upholding the lower court's denial of summary judgment, the Appellate Division held that "[c]onstruing the purported releases at issue in the context of the controversy being settled, if any, and the purpose for which they were given and considering the conflicting rational interpretations of those instruments advanced by the parties in support of and in opposition to the motion, triable issues exist with regard to the parties' intentions as to the scope and meaning of the alleged releases." *Id*. (internal citations omitted).

## Third Department Appellate Division

Likewise, in the Third Department Appellate Division case of *Zilinskas v Westinghouse Elec. Corp.*, 248 AD2d 777, 777-78 [3d Dept 1998] a third-party defendant appealed the denial of its motion for summary judgement dismissing a third-party complaint upon the grounds that the parties had entered into a prior release regarding ". . . ***all claims of any kind or nature***. . .". (emphasis added). In upholding the order of the lower court, the Appellate Division held that, "the general language of the instrument releasing [third-party defendant] 'from all claims of any kind or nature' was followed by a specific recital limiting the claims released to those 'relating to the installation of a busway at [third-party defendant's] facility'. By restricting the general words of release to specific claims relating to the busway installation, the parties expressed their clear intent that the release was to be operative only with respect to claims regarding the busway." *Id*. at 779.

In *Salewski v Music*, 150 AD3d 1353, 1353 [3d Dept 2017], the Court reversed the trial court's decision which granted a third-party defendant's motion to dismiss the third-party complaint based on the execution of a prior release. The Court found the initial recital paragraphs as well as the repeated use of the term "injuries" limited the general language contained in the release to particular injuries, particular parties, and a particular incident. *Id.* at 1354-55.

## Fourth Department Appellate Division

The facts of *Bugel v WPS Niagara Properties, Inc.,* 19 AD3d 1081 [4th Dept 2005] are notably similar to the present case. There, plaintiff commenced an action for personal injuries that he sustained in a work-related accident. Defendant argued that the claim was barred by a release executed following the accident when his employment was terminated. *Id.* at 1082. In the termination agreement, in exchange for compensation, plaintiff ". . . released from liability [] ***all claims existing as of the date of the agreement***." *Id*. (emphasis added). The Fourth Department held that, ". . . viewing the letter agreement as a whole and in light of its stated purpose, we conclude that ***the parties intended that plaintiff release only his employment-related claims against his employer and related entities and individuals***." *Id*. at 1083. (emphasis added).

In *Corzatt v Taylor*, 126 AD3d 1505, 1505 [4th Dept 2015], defendant sought to dismiss personal injury claims brought by plaintiff stemming from a motor vehicle accident due to a prior release. The release included broad language releasing the defendant from "***all actions, causes of action ... claims and demands whatsoever that plaintiff ever had against defendant from the beginning of the world to the day of the date of this RELEASE***." *Id.* (internal quotation marks omitted) (emphasis added). The release went on to specifically include plaintiff's property damage claims. *Id.* However, despite that exceptionally broad language, the Appellate Division reversed the dismissal of Plaintiff's complaint, holding that "viewing the release in the context of the

controversy being settled and in light of the specific reference to plaintiff's property damage claims, we conclude that the parties intended that plaintiff release only such property damage claims." *Id.* at 1506.

In *Abdulla v Gross*, 124 AD3d 1255, 1275 [4th Dept 2015], the Fourth Department Appellate Division, again, reiterated that ". . . the general words of a release are limited by the recital of a particular claim." (citing *Camperlino v Bargabos*, 96 AD3d 1582, 1583-84 [4th Dept 2012]) (internal quotation marks omitted). There, defendant sought to dismiss personal injury claims brought by plaintiff stemming from a slip and fall accident due to a prior release relating to another slip and fall incident. The Court reasoned as follows:

> In relevant part, the release stated that defendant, in exchange for providing plaintiff with the agreed-upon settlement amount, was "released and forever discharged ... from all manner of actions, causes of action, suits, ... claims and demands whatsoever" that plaintiff "ever had, now has or which [her] successors and assigns, heirs, executors or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of those present ... *More specifically, for injuries sustained in a slip and fall incident which occurred on June 3, 2009, in the City of Lackawanna, County of Erie and State of New York.*"

*Id*. at 1256 (emphasis in original). Despite the exceptionally broad language above, the court upheld the denial of defendant's motion to dismiss, holding that, the parties' decision to specifically refer to the June 3, 2009 slip and fall, thereby limited the general language to claims arising solely from that action. *Id*. at 1257.

As demonstrated by the trove of cases cited above from all four appellate departments as well as multiple cases from the New York Court of Appeals, contrary to Defendant's assertion otherwise, "any and all claims" is not magic language in New York. Courts still review the release as a whole to determine whether the scope of the general language is limited by other language of

the release. Here, just like many of the cases cited above, the three recital paragraphs (which are the *only* recital paragraphs), of the subject release all contain language limiting the release to employment-related claims. Towards that end, the last recital paragraph states that the parties ". . . are desirous of resolving the case[7] and all other matters between them ***concerning the employment relationship and the termination of the employment relationship***." *Franken* Decl. Ex. "3" at pg. 2 (emphasis added). Thus, like in *King*, the "any and all claims" language through the document should be limited.

## IV.    Defendant's Remaining Arguments Are Unavailing

Defendant's argument that because Plaintiff alleged that some of the acts at issue were within the course scope of employment, she cannot allege that Liles's sexual assault was outside the scope of his employment, is unsupported by the facts and the law.  Further, Plaintiff's argument is not contradicted by what is in her amended pleading. Whether Liles was acting in the scope of his employment is not legally relevant to his individual liability for an intentional tort, it is only legally relevant as to any employment related claims against him and UMG's negligent supervision/retention of their employee. The New York Court of Appeals has repeatedly held that sexual assaults are "a clear departure from the scope of employment and are committed for wholly personal motives." *N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251 [2002]; *see also, Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933 [1999] ("Assuming plaintiff's allegations of sexual abuse are true, it is clear that the employee here departed from his duties for solely personal motives unrelated to the furtherance of the Hospital's business."); *see also*, *Johansmeyer v. New York City Dept. of Ed.*, 165 A.D.3d 634, 635 [2d Dept. 2018] (sexual abuse of a minor-student by

---

[7] "The case" which refers to Plaintiff's NYSHR Complaint, is indisputably about employment-related claims, only. *See, Franken* Decl., **Ex. "2"**.

a school employee not within the scope of employment); *see also, Hendricks v 333 Bayville Ave. Rest. Corp.*, 260 AD2d 545, 546 [2d Dept 1999] (holding that the employer cannot be held liable for rape by one of its employees as it was not within the scope of his employment, but "clearly committed for personal motives unrelated to the [the employer's] business."); *see also, Escobar v Spartan Assemblies, Inc.*, 267 AD2d 272, 273 [2d Dept 1999] (holding that the employer could not be held liable for the intentional acts of assailant as those alleged acts were outside the scope of his employment); *see also, Joshua S. by Paula S. v Casey,* 206 AD2d 839, 839 [4th Dept 1994] (holding that alleged sexual assault was not within the scope of employment); *Koren v Weihs*, 190 AD2d 560, 561 [1st Dept 1993] (doctor's sexual assault of patient not within the scope of his employment). New York's substantive law in this area has been acknowledged and applied by this District on numerous occasions. *See, Kovalchik v City of New York,* 09-CV-4546 RA, 2014 WL 4652478 at *10 [SDNY Sept. 18, 2014] (applying New York law in holding that the alleged sexual assaults were not committed in the scope of assailant's employment); *see also, Adorno v Correctional Services Corp.*, 312 F Supp 2d 505, 517 [SDNY 2004] ("***New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context***.") (citing *Ross v Mitsui Fudosan, Inc.*, 2 F Supp 2d 522, 531 [SDNY 1998]) (emphasis added).

Thus, the fact that Liles used his position as an employee, as well as UMG's facilities and locations, to sexually abuse, assault and rape PCVA Jane Doe is legally relevant only as to UMG's liability as his employer under the Gender Motivated Violence Act and general negligent supervision/retention law, but is irrelevant when it comes to Liles's intentional, criminal acts. *See*, N.Y.C. Admin. Code §§ 10-1104 (". . . any person claiming to be injured by ***a party*** who commits,

***directs, enables, participates in, or conspires in*** the commission of a crime of violence motivated by gender has a cause of action against such party. . .”); *see also, Johansmeyer*, 165 A.D.3d at 635 (“The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would probably have spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of the employee.”) (internal citations and quotation marks omitted); *see, Franken* Decl., **Ex. “1”** at pgs. 10-11.  Because UMG has been dismissed and the subject release disposed of employment related claims, those allegations are moot.

Towards that end, Plaintiff's Amended Complaint specifically states (which Defendant conveniently omits), that Liles was acting in the course and scope of his employment, “***at all relevant times***.” *See*, *Franken* Decl., **Ex. “1”** at ¶ 36 (emphasis added). As stated above, his scope of employment is only relevant as to claims against UMG and employment claims against Liles. Under New York Law, whether Liles was acting within the course and scope of his employment has no bearing on his personal liability for an intentional, criminal act. *See, Johansmeyer*, 165 A.D.3d at 635; *Jackson v New York Univ. Downtown Hosp.*, 69 AD3d 801, 801 [2d Dept 2010]; (“Although an employer cannot be held vicariously liable ‘for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employer's business' ***the employer may be held liable for negligent hiring, supervision, and retention of the employee.***”) (internal citations omitted) (emphasis added).

Moreover, to the extent the Court finds those alleged facts inconsistent or inapplicable now that UMG has been dismissed from the case, Plaintiff should be permitted to amend her Complaint. “Courts within the Second Circuit often hold that ‘prior inconsistent pleadings, though admissible ... are controvertible, not conclusive admissions.'” *Rafferty v Hempstead Union Free School Dist.*,

2020 WL 7024311 at *7 [EDNY Nov. 30, 2020] (citing *Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, 2014 WL 808013 at *5 [E.D.N.Y. Feb. 28, 2014]. Instead of striking or dismissing an amended complaint based solely on contradictory statements or those inconsistent with prior pleadings "'the more usual and benevolent option is to accept the superseded pleadings, but allow the factfinder to consider the earlier pleadings as admissions in due course.'" *Russell v Hollister Corp.*, 2014 WL 2723236 at *4 [SDNY June 17, 2014] (quoting *Barris v. Hamilton*, 1999 WL 311813, at *2 [S.D.N.Y. May 17, 1999]). Thus, Defendant's citation to *Colliton v Cravath, Swaine & Moore LLP*, 2008 WL 4386764 [SDNY Sept. 24, 2008], *affd,* 356 Fed Appx 535 [2d Cir 2009] is unpersuasive as Plaintiff it not seeking to "plead around" the release, but, instead, seeking to remove allegations that are now legally irrelevant with Liles's employer- UMG, out of the case.

Contrary to Defendant's accusations, Plaintiff is not "suggesting" that twenty (20) years ago she made a strategic legal decision to preserve her rape claim against Liles for a revived GMVA lawsuit. This is yet another baseless attempt to attack and discredit Plaintiff. The argument is particularly ironic when Liles told this Court that he had never once had an allegation of sexual abuse against him, but just weeks later finds himself arguing that Plaintiff released any claims she had against him in a prior settlement relating to prior allegations of sexual abuse by Liles. *See,* ECF Doc. No. 15. The reality is, as evidenced by the plain language of the four corners of the release as well as fact that she did not report the rape at the time, the release did not contemplate the rape. In attempting to discredit Plaintiff's arguments with the fact that she did not contemporaneously report that she was raped by Liles, Liles disregards the extensive body of research supporting trauma-delayed disclosure—the same foundational science upon which every revival statute in this country is based. *See,* Beverly Engel L.M.F.T. Why Don't Victims of Sexual Harassment Come Forward Sooner?, PSYCHOLOGY TODAY, Nov. 16, 2017,

https://www.psychologytoday.com/us/blog/the-compassion-chronicles/201711/why-dont-victims-sexual-harassment-come-forward-sooner. The fact is, Liles's rape of plaintiff was not disclosed to UMG or the NYSHR because the only issues being resolved were employment related issues as specifically stated by the NYSHR Complaint.  Releasing claims against Liles for a violent rape was never contemplated nor intended and appears nowhere in the language of the release or the NYSHR Complaint (which the release refers to in the second recital paragraph). This is evidenced by the plain language of the release and further evidenced by the fact that Plaintiff did not disclose her rape, not as a strategic litigation tactic twenty years in the making, but because, like many sexual abuse survivors, she was simply not ready. At this stage, the only facts that matter are those contained in Plaintiff's complaint, which must be taken as true. To the extent Defendant's seek to challenge Plaintiff's credibility for delayed-reporting of her sexual assault, that is a matter for the jury to decide.

## **CONCLUSION**

Defendant and his attorneys have repeatedly attacked Plaintiff and her counsel, accusing Plaintiff of acting "frivolously" and "abusing the legal process" by continuing to pursue her claims with allegedly "no basis" to do so. But Plaintiff submits: do the scores of New York Appellate Court cases (and cases from this District) cited above—cases demonstrating that "the cases are many" where similarly broad release language has been limited to avoid barring subsequent claims—not establish a good faith legal argument? Were all those plaintiffs who challenged similar release language, also abusing the legal process? The answer is no—and neither is PCVA Jane Doe. The Court should deny the motion to dismiss, and Plaintiff should be permitted to proceed with discovery on her claims.

Dated: New York, New York

     May 30, 2025

                                PFAU COCHRAN VERTETIS AMALA PLLC

                                By  *Lucas B. Franken*
                                      Lucas B. Franken

**<u>CERTIFICATE OF SERVICE</u>**

On May 30, 2025, I caused a copy of the foregoing pleading to be filed electronically with the Court using the Court's CM/ECF system, which will transmit a notice of electronic filing to all counsel of record in this action.

PFAU COCHRAN VERTETIS AMALA PLLC

By  *Lucas B. Franken*
_____
Lucas B. Franken

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to the Local Rules of the Southern District of New York, that the foregoing Memorandum of Law in Opposition to the Motion of Defendant Kevin Liles complies with the word-count limitations set by this Court, and contains less than 8,750 words.


PFAU COCHRAN VERTETIS AMALA PLLC


By _____*Lucas B. Franken*_____
Lucas B. Franken