UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PCVA JANE DOE,

                Plaintiff,

        v.

UMG RECORDINGS, INC. and KEVIN WESLEY LILES,

                Defendants.

Case No. 1:25-cv-02745

---

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT KEVIN WESLEY LILES'S MOTION TO DISMISS

## TABLE OF CONTENTS

I. The General Release Bars Plaintiff's Claims..................................................................2

II. Plaintiff's Attempt to Contradict Her Own Allegations and Legal Theory Should be Rejected..................................................................................................................8

**TABLE OF AUTHORITIES**

**CASES**

*Abdulla v. Gross*, 124 A.D.3d 1255 (2015) ...................................................................................5

*Alcantara v. 603-607 Realty Assocs.*, 273 A.D.2d 329 (2000) .......................................................7

*B.B. & S. Treated Lumber Co. v. Groundwater Tech., Inc.*, 256 A.D.2d 430 (1998) .....................5

*Barshay v. Naithani*, No. 20-CV-8579 (KPF), 2023 WL 2051170 (S.D.N.Y. Feb. 16, 2023) ..................................................................................................................................4

*Bugel v. WPS Niagara Props., Inc.*, 19 A.D.3d 1081 (2005) ......................................................4, 5

*Campos v. Aegis Realty Mgmt. Corp.*, 2020 WL 433356 (S.D.N.Y. Jan. 28, 2020) .......................5

*Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ....................................................................................9

*Corzatt v. Taylor*, 126 A.D.3d 1505 (2015) ....................................................................................5

*Enock v. Nat'l Westminster Bankcorp, Inc.*, 226 A.D.2d 235 (1996) ............................................3

*Hall Enters., Inc. v. Liberty Mgmt. & Const., Ltd.*, 37 A.D.3d 658 (2007) ....................................7

*Herman v. Malamed*, 110 A.D.2d 575 (1985) ................................................................................7

*In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59 (Bankr. S.D.N.Y. 2009) ............................................6

*In re Schaefer*, 18 N.Y.2d 314 (1966) ............................................................................................6

*In re WorldCom, Inc.*, 296 B.R. 115 (Bankr. S.D.N.Y. 2003) ........................................................4

*Kemp v. Perales*, 199 A.D.2d 320 (1993) ......................................................................................6

*King v. City of New York*, 234 A.D.3d 636 (2025) .........................................................................4

*Liberty Mut. Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. 22-CV-499 (RA), 2023 WL 4978046 (S.D.N.Y. Aug. 3, 2023) .............................................................................7

*Mangini v. McClurg*, 24 N.Y.2d 556 (1969) ...............................................................................2, 3

*Maxwell Partners, L.L.C. v. Bldg. Studio, LLP*, 32 A.D.3d 321 (2006) .........................................5

*Mazzurco v. PII Sam, LLC*, 153 A.D.3d 1341 (2017) ....................................................................7

*Meyer v. Fanelli*, 266 A.D.2d 361 (1999) ......................................................................................7

*M.M. v. Church of Our Lady of the Annunciation*, 162 N.Y.S.3d 598 (N.Y. App. Div. 2022) ..................................................................................................................................2

*Northgate Elec. Corp. v. Barr & Barr, Inc.*, 61 A.D.3d 467 (2009) ...............................................6

*Perritano v. Town of Mamaroneck*, 126 A.D.2d 623 (1987).........................................................7

*Rotondi v. Drewes*, 31 A.D.3d 734 (2006) ....................................................................................5

*Russell v. Hollister Corp.*, No. 13-CV-5273 (PAC), 2014 WL 2723236 (S.D.N.Y. June 17, 2014) ....................................................................................................................................9

*Salewski v. Music*, 150 A.D.3d 1353 (2017).................................................................................5

*Simon v. Simon*, 274 A.D. 447 (1948) ...........................................................................................3

*Smith v. City of New York*, 236 A.D.3d 414 (2025).................................................................3, 4

*Stevens v. Town of Chenango,* 167 A.D.3d 1105 (N.Y. App. Div. 2018) ....................................2

*Zilinskas v. Westinghouse Elec. Corp.*, 248 A.D.2d 777 (1998) ....................................................5

Plaintiff signed an Agreement that released all possible claims against UMG and Kevin Liles using the broadest possible release language, without any limitation. The Agreement is both clear and repetitive, evidencing the parties' obvious intentions: to resolve any and all claims for any and all conduct by UMG or the Universal Releasees, including Liles, from the beginning of time through the date of the Agreement. Under New York law, the release plainly bars the claims that she now asserts. *See* ECF 32 ("Mot.") at 7-10.

Plaintiff nevertheless asks the Court to permit her case to proceed because she supposedly only intended to release workplace conduct, not the alleged "assault." ECF 36 ("Opp.") at 1. But her position cannot be squared with the language of the release, nor with New York case law. Nor can it be squared with her sworn allegations that the alleged assault occurred in the scope of Liles's employment (*see* Am. Compl. ¶¶ 36, 61), nor the very legal foundation of her claim against UMG (*see, e.g., id.* ¶¶ 52-66).

To support her position, Plaintiff misleadingly elides material language from the Agreement, which, in full, makes clear that it covers not simply workplace torts, but claims for all "other injur[ies]." *See* Opp. at 3-4. She ignores all of the authority cited in the Motion to Dismiss regarding the release, and instead refers the Court to a raft of inapposite case law, which she mischaracterizes. And as for her own allegations, she asks the Court simply to ignore them and to conclude, as a matter of law, that she never had any basis to sue UMG for the conduct at issue here because an employer can never be liable for assault.[1] Plaintiff's decision to bring

---

[1] Plaintiff's new position that her claims against UMG are not simply barred by the language of the release but also by the law of respondeat superior and negligent supervision, Opp. at 16-17, further demonstrates Plaintiff counsel's failure to ensure that a good faith basis existed for the claims asserted.

these frivolous claims against Liles is sanctionable. Her continued efforts to defend them, even more so. The Complaint should be dismissed.[2]

I.  **The General Release Bars Plaintiff's Claims**

New York courts routinely interpret the type of broad general release contained in the Agreement to encompass the release of any possible claims. *See* Mot. at 7. Plaintiff fails to address *any* of the cases Liles cites on this point. For example, Plaintiff ignores entirely *M.M. v. Church of Our Lady of the Annunciation*, which unambiguously held that a unilateral, mistaken belief about the scope of a general release cannot "constitute an adequate basis for invalidating it." 162 N.Y.S.3d 598, 600-01 (N.Y. App. Div. 2022). She also fails to address *Stevens v. Town of Chenango*, which makes clear that the phrase "including but not limited to" confirms that the parties intended to release more than simply Plaintiff's underlying human rights claim. 167 A.D.3d 1105, 1107 (N.Y. App. Div. 2018). Nor does Plaintiff engage with the numerous cases Liles cites in which New York courts interpret general releases to cover any claims that could have been litigated at the time of execution. *See generally* Mot. at 7-10.

Rather than confront these cases, Plaintiff responds by citing a litany of inapposite cases. For example, Plaintiff relies heavily on *Mangini v. McClurg*, 24 N.Y.2d 556 (1969), which she calls a "seminal" case. *See* Opp. at 1, 6, 7, 9. But there, the plaintiff alleged that the releases were entered into "under a ***mutual mistake*** of facts as to the extent of her injuries, and that the parties

---

[2] Plaintiff chides Liles for providing information about his background, arguing those facts are irrelevant. But that is important in a context where Plaintiff has repeatedly defamed him. Plaintiff's counsel's law firm launched, maintained, and advertised a website maligning Liles's character, even after disclosure of the Agreement evidencing that Plaintiff's lawsuit is frivolous. Plaintiff did not deactivate the site until this Court's repeated admonishments. This is to say nothing of Plaintiff's counsel's repeated, defamatory statements to the press baselessly saying that he "expect[ed]" there are "others" and alleging that Liles was attempting to "threaten," "silence," and "intimidate" Plaintiff because he vigorously defended himself in this Court.

2

did not intend to discharge liability for ***unknown*** injuries." *Mangini*, 24 N.Y.2d at 560 (emphasis added).  Here, there was no mutual mistake or unknown injury.  Plaintiff undoubtedly knew of the purported assault at the time of the Agreement, and she chose to release it and waive her claims.[3]  Plaintiff explicitly, and with the advice of counsel, released "***any and all possible claims*** . . . known to her or reasonably should be known by her" including "any claims of breach of contract, tortious interference with contract; tortious interference with prospective contractual relationship; fraud; fraudulent inducement; ***or other injury.***"  *See* Mot. Ex. 1 ¶ 5(a) (emphasis added).  The direction from the *Mangini* court is nonetheless instructive:

> "This is not to say a release may be treated lightly. . . . It should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice. It is for this reason that the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake, must be established ***or else the release stands.***"

*Id.* at 563 (emphasis added).  Plaintiff does not allege duress, illegality, fraud, or mutual mistake.  She instead asks the Court to interpret the Agreement on its face, which makes clear that the parties intended to "achieve a truly general settlement."  *Id.* at 562.

Because releases may not be "treated lightly," it is unsurprising that several of Plaintiff's cases actually ***dismiss*** claims based on the same type of general release found here.  For example, Plaintiff twice cites *Smith v. City of New York*, 236 A.D.3d 414 (2025).  *See* Opp. at 1, 5.  The terms of the general release in *Smith* were similar to those here: the plaintiff specifically released the city "from any and all state and federal tort claims, causes of action, suits, occurrences, and

---

[3] For the same reason, Plaintiff's reliance on *Simon v. Simon*, 274 A.D. 447, 451 (1948) is misplaced. There, neither party was aware nor reasonably could have been aware of the dispute at the time of the release. *Id.* So, too, in *Enock v. Nat'l Westminster Bankcorp, Inc.*, the court held that in the "absence of a showing that a specified matter was in dispute at the time a general release was given, the release cannot be held to bar the releasor's rights as to such matter." 226 A.D.2d 235, 236 (1996). Here, there is no dispute regarding Plaintiff's awareness.

3

damages, whatsoever, known or unknown," which plaintiff "had, now has, or hereafter can, shall, or may have." *Smith*, 236 A.D.3d at 415. Reading the agreement "as a whole," the court found that the general release contained "no language limiting its scope" to the underlying arrest claim and emphasized that the "represented parties" negotiated an "arms-length transaction" where each side would be "protecting their own interests." *Id* at 417. Finding the general release "clear and unambiguous on its face," the court dismissed the plaintiff's action. *Id.* The same result is required here. *See also Barshay v. Naithani*, No. 20-CV-8579 (KPF), 2023 WL 2051170, at *9 (S.D.N.Y. Feb. 16, 2023) (enforcing release of "any claims liabilities, or obligations" where plaintiff was "aware of his potential claim" at the time the release was executed); *In re WorldCom, Inc.*, 296 B.R. 115, 126 (Bankr. S.D.N.Y. 2003) (enforcing "clear and unambiguous" release covering "all present and future claims, both known and unknown").

The cases Plaintiff refers to as "similar" to her own are, in fact, easily distinguishable. Plaintiff claims that *King v. City of New York*, 234 A.D.3d 636 (2025) contains "strikingly similar facts." Opp. at 9. Not so. In *King*, two actions were proceeding in parallel: one in state court and one in federal court. *King*, 234 A.D.3d at 636. The settlement agreement at issue "specifically provided" that the plaintiff was settling only her federal action, while the state action was still pending. *Id.* The court found that the release in the agreement did not cover the state action specifically because it "makes no mention of the claims in the instant state action, *although it was pending at the time*." *Id.* (emphasis added). No such issue exists here.

In *Bugel v. WPS Niagara Props., Inc.*, 19 A.D.3d 1081 (2005), which Plaintiff describes as "notably similar to the present case," Opp. at 13, the plaintiff commenced a personal injury action against a Company's predecessor that was not explicitly named, and the defendant asserted

4

a release signed as part of a "severance package"[4] that released "the Company" from liability for all existing claims. *Bugel*, 19A.D.3d at 1082. The court found it "unreasonable" that the plaintiff would understand he had released "claims against conceivably hundreds of named and unnamed corporations" and "employees" under the umbrella of the "Company." *Id.* Here, by distinct contrast, Liles is specifically named and unambiguously released in the Agreement.[5]

Plaintiff also draws the Court's attention to a plethora of cases demonstrating, unsurprisingly, that releases ***can*** be limited in various ways. But such limitations do not exist here. Plaintiff cites several cases in which a release was limited by specific reference to the underlying claim being settled. *See, e.g.*, *Maxwell Partners, L.L.C. v. Bldg. Studio, LLP*, 32 A.D.3d 321, 324 (2006) (release explicitly limited to claims "in any way related to the contract documents"); *Rotondi v. Drewes*, 31 A.D.3d 734, 735 (2006) (release explicitly limited to "claims arising out of" the rent or occupancy of premises); *Zilinskas v. Westinghouse Elec. Corp.*, 248 A.D.2d 777, 778 (1998) (release explicitly limited to "all claims of any kind or nature relating to the installation of a busway. . . including all claims for payment of" identified invoices); *Salewski v. Music*, 150 A.D.3d 1353, 1354 (2017) (release explicitly limited to "claims which are or may have been the subject of the incident"); *Corzatt v. Taylor*, 126 A.D.3d 1505 (2015) (release explicitly limited to "property damage claims" resulting from accident); *Abdulla*

---

[4] Plaintiff has abandoned her initial frivolous assertion that the Agreement was part of a "severance" package (*see* ECF No. 26), now conceding it was, indeed, a settlement agreement (*see* Opp. at 4).

[5] Plaintiff similarly relies on inapposite case law regarding the application of releases to unnamed third parties, ignoring the fact that Liles was specifically released, by name, in the Agreement. *See, e.g.*, *B.B. & S. Treated Lumber Co. v. Groundwater Tech., Inc.*, 256 A.D.2d 430, 432 (1998) (holding that a release did not extend to an unnamed third party not contemplated by the agreement); *Campos v. Aegis Realty Mgmt. Corp.*, 2020 WL 433356, at *9 (S.D.N.Y. Jan. 28, 2020) (finding additional discovery necessary to interpret the scope of the ambiguous release provision as applied to third parties). There is no such ambiguity here.

5

*v. Gross*, 124 A.D.3d 1255, 1256 (2015) (release explicitly limited to "injuries sustained in a slip and fall incident"); *In re Schaefer*, 18 N.Y.2d 314, 317 (1966) (release explicitly limited to claims involving "liability as endorsers"); *Kemp v. Perales*, 199 A.D.2d 320, 321 (1993) (release explicitly limited to "claims arising out of the facts and circumstances alleged in the proceeding"). By contrast, neither the release, nor the Agreement as a whole, is in any way limited to Plaintiff's underlying claims. Plaintiff here settled "all other matters between the parties up to and including the date of this Agreement," (Mot. Ex. 1 ¶ 1), waived "any and all possible claims" including claims for any "other injury," (*id.* ¶ 5(a)), and promised not to sue UMG or Liles for "any other injury" she had as of the date of the Agreement (*id.* ¶ 5(b)).

Plaintiff also relies on case law where the terms of the agreement make clear that the release applies only to specific claims. *See, e.g.*, *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 71 (Bankr. S.D.N.Y. 2009) (the agreement was lacking reference to a "general" release or "any disputes other than those relating" to the two bonds). The only thing the cited cases demonstrate is that Plaintiff easily could have limited the release to carve out certain claims or limit the Agreement to claims underpinning the human rights complaint,[6] but she chose not to. *See Northgate Elec. Corp. v. Barr & Barr, Inc.*, 61 A.D.3d 467, 468 (2009) ("If plaintiff had wished to except its delay claim from the release, it should have included plain language to that effect in the release.").[7]

---

[6] Plaintiff's inclusion of the human rights complaint appears to be intended to further malign and disparage Liles. Its inclusion is unnecessary to resolve the question regarding the scope of the release in the Agreement. Liles provided the complaint in good faith upon request from counsel and counsel agreed to maintain its confidentiality (as it would have remained since it was withdrawn upon resolution of her claims). Plaintiff breached that agreement just as she breached the Agreement at issue. Plaintiff and her counsel's conduct is sanctionable here too.

[7] Plaintiff also cites to at least six notably short, opaque cases that provide no specific details about the language of the releases at issue, nor a recitation of the facts. Nevertheless, all are inapposite. *See, e.g.*, *Alcantara v. 603-607 Realty Assocs.*, 273 A.D.2d 329 (2000) (finding a release limited to a specific

Similarly unpersuasive is Plaintiff's repeated reliance on the Agreement's mention of her employment claims in the recitals. "As courts applying New York law have made clear, the mere recitation of the specific claims underlying a settlement will not undermine the broad prophylactic effect of general release language." *Liberty Mut. Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. 22-CV-499 (RA), 2023 WL 4978046, at *8 (S.D.N.Y. Aug. 3, 2023). Nothing in the Agreement suggests that the release is in any way limited. It says the opposite. The preamble of the Agreement makes clear that the parties intended to settle not only "the matter and the ending of the employment relationship" but also "all matters related thereto ***and all other matters***" between them. Mot. Ex. 1 ¶ 1 (emphasis added). The release, itself, states that Plaintiff waived:

> [A]ny claims relating to wrongful or discriminatory treatment . . . , ***and*** any claims relating to rights under federal, state or local laws, ***including but not limited to***, Title VII of the Civil Rights Act of 1964, as amended, or any other form of illegal discrimination. . .or any other form of illegal discrimination, retaliation, ***or harassment within the meaning of federal, state, or local law,*** . . . ***or other injury. GALLARDO specifically acknowledges that she waives and releases any and all claims.***

*Id.* ¶ 5(a) (emphasis added). To make her argument, Plaintiff misleadingly excises from her Opposition the full language of this provision, eliminating both the "or other injury" language and her specific, unqualified waiver and release of all claims. *See* Opp. at 4. Plaintiff's purposeful exclusion seemingly recognizes that this language precludes her present claims.

The release continues with Plaintiff specifically agreeing to withdraw her human rights

---

accident and not meant to cover liability for a "completely unrelated accident"); *Herman v. Malamed*, 110 A.D.2d 575, 577 (1985) (limiting a release to a specific contract based on parole evidence of a second contract); *Mazzurco v. PII Sam, LLC*, 153 A.D.3d 1341 (2017) (limiting an "ambiguous" release to a specific property not at issue in the suit); *Perritano v. Town of Mamaroneck*, 126 A.D.2d 623, 624 (1987) (limiting a release in a defamation case from application to a collective bargaining dispute); *Meyer v. Fanelli*, 266 A.D.2d 361 (1999) (holding release did not apply to wholly unrelated claims); *Hall Enters., Inc. v. Liberty Mgmt. & Const., Ltd.*, 37 A.D.3d 658, 659 (2007) (construing "purported releases" as ambiguous in scope). Here, of course, Plaintiff's current allegations are indisputably related to her human rights complaint, and the release unambiguously covers all claims known or which reasonably should have been known.

7

complaint and again agreeing not to file any claim against Universal or any Universal Releasee in any court "alleging discrimination or harassment . . . *or claiming any other injury arising from actions of . . . the Universal RELEASEES, up to and including the date of this Agreement. This waiver includes all claims now known to GALLARDO or that reasonably should be known to her.*"[8] Mot. Ex. 1 ¶ 5(b) (emphasis added). Plaintiff, again, misleadingly excludes the key language of Paragraph 5(b) from "or claiming any other injury" to "reasonably should be known by her." It is not surprising that the release expressly mentions the asserted claims, but the release also makes clear it is not limited to simply those claims but rather that the parties intended to settle "all matters related thereto *and all other matters between the parties up to and including the date of this Agreement*." *Id.* ¶ 1 (emphasis added).

## II.   Plaintiff's Attempt to Contradict Her Own Allegations and Legal Theory Should be Rejected

Plaintiff's arguments hinge on the assertion that the release only covered employment activity and her allegations do not relate to employment activity. As explained above, her position is entirely inconsistent with the language of the Agreement and New York case law interpreting releases. But even if such a limitation existed, the Complaint makes plain that the conduct alleged here was released. Her sworn pleading asserts that "[a]t all relevant times, Kevin Liles was acting in the course and scope of his employment." *See* Am. Compl. ¶¶ 36, 61. And, of course, her legal claims against UMG were predicated on the allegations that the conduct by Liles constituted employment activity for which the law would impose liability on UMG.

---

[8] The broad release of claims that "reasonably should be known to her" appears twice in the Agreement. *See* Mot. Ex. 1 ¶¶ 5(a)-(b). Plaintiff does not contend that she did not know about the (false) claims in November 2005 when she signed the Agreement. She simply asks the Court to ignore the language.

8

Plaintiff now asks this Court to ignore her allegations and declare that her legal claim against UMG was never viable because an assault cannot be considered within the scope of employment as a matter of law.  *See* Opp. at 17.  Plaintiff states that she is "not seeking to 'plead around' the release, but, instead, seeking to remove allegations that are now legally irrelevant with . . . UMG out of the case." *Id.* at 18.  That statement is misleading at best.  Plaintiff's allegations did not suddenly become "legally irrelevant" when she was forced to drop UMG.  They simply became inconvenient for her once the Agreement, which she failed to disclose, was revealed to the Court.  There is no amount of repleading that can cure the fact that Plaintiff filed a Verified Complaint stating that "[a]t all relevant times, Kevin Liles was acting in the course and scope of his employment." *See* Am. Compl. ¶¶ 36, 61.  *See also Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008).

Nor should the Court credit her reversal in position, now claiming that she *never* could have had a claim against UMG for the very "assault" for which she previously sought to hold UMG liable.  *Compare* Am. Compl. ¶¶ 54, 55 *to* Opp. at 17-18.  By filing a Verified Complaint against UMG for that conduct, Plaintiff represented to the Court that she had a good faith basis for asserting that claim.  She cannot now reverse course for the sake of strategic expediency.  But regardless her argument is irrelevant as she expressly released her claims against Liles himself.

Plaintiff's request for "the more usual and benevolent option" of "accept[ing] the superseded pleadings . . . but allow[ing] the factfinder to consider the earlier pleadings as admissions in due course," *Russell v. Hollister Corp.*, No. 13-CV-5273 (PAC), 2014 WL 2723236, at *4 (S.D.N.Y. June 17, 2014), ignores the critical difference that Plaintiff here is not a *pro se* litigant and has already, through counsel, amended her Complaint once.  As Plaintiff notes elsewhere, "the only facts that matter here are those pled by Plaintiff in her Complaint,"

9

Opp. at 1, and those facts (and the applicable law) require dismissal. Any amendment would be futile, and her request should be denied.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Amended Complaint with prejudice. Liles also respectfully requests that the Court retain jurisdiction over this matter for the limited purpose of seeking sanctions.

Dated: Washington, DC
      June 6, 2025

                                            */s/ Krystal C. Durham*
                                            Joseph M. Terry (*pro hac vice*)
                                            Krystal C. Durham (#5157623)
                                            Allison S. Eisen (#5689682)
                                            William Searcy (*pro hac vice*)
                                            WILLIAMS & CONNOLLY LLP
                                            For Matters in New York:
                                                  650 Fifth Avenue, Suite 1500
                                                  New York, NY 10019
                                            680 Maine Avenue, S.W.
                                            Washington, DC 20024
                                            (202) 434-5000
                                            jterry@wc.com
                                            kdurham@wc.com
                                            aeisen@wc.com
                                            wsearcy@wc.com

                                            *Attorneys for Defendant Kevin Wesley Liles*

## CERTIFICATE OF SERVICE

On June 6, 2025, I caused a copy of the foregoing pleading to be filed electronically with the Court using the Court's CM/ECF system, which will transmit a notice of electronic filing to all counsel of record in this action.

*/s/ Krystal C. Durham*
Krystal C. Durham

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to the Local Rules of the Southern District of New York, that the foregoing Reply Memorandum in Support of Defendant Kevin Liles's Motion to Dismiss complies with the word-count limitations set by this Court, and contains 3,424 words.

*/s/ Krystal C. Durham*
Krystal C. Durham
