UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
PCVA JANE DOE,

        Plaintiff,

      - against –

UMG RECORDINGS, INC. and
KEVIN WESLEY LILES,

        Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 2745 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

### I.  Background

Plaintiff was employed by UMG Recordings, Inc. ("UMG") in the early 2000s.[1]  On June 29, 2004, plaintiff filed a complaint with the New York State Division of Human Rights ("Human Rights Complaint"), asserting a claim of an unlawful discriminatory practice against UMG and defendant Kevin Wesley Liles ("Liles").  See ECF No. 35-2.  On November 30, 2005, plaintiff and UMG executed a confidential Settlement Agreement and General Release ("Agreement and Release").  ECF No. 35-3.  The content of the Human Rights Complaint and the Agreement and Release are central to the

---

[1]    The Amended Complaint recites no facts regarding when, or under what circumstances, plaintiff left her employment at UMG.  The parties dispute the precise dates relating to plaintiff's employment history: plaintiff states that she began working at UMG in 1999, while defendant states that plaintiff was employed at Def Jam (a record label division and UMG subsidiary) from 2001 to 2003.  ECF No. 35-1 ("AC") ¶ 21; ECF No. 32 at 2 n.2, 3.  Resolution of that dispute is unnecessary to address the motion before us.

resolution of this case.    Inexplicably, neither document is referenced in the initial or Amended Complaint or attached thereto. Given the centrality of these documents, we begin by describing their relevant provisions.[2]

**A. New York Human Rights Complaint**

Plaintiff's 2004 complaint against UMG and Liles, filed with the New York State Division of Human Rights, claimed "an unlawful discriminatory practice relating to Employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of Opposing Discrimination and Sex."   Human Rights Complaint at 1.   Specifically, the Human Rights Complaint alleges that plaintiff was fired from UMG in retaliation for her complaints of discrimination and harassment.   Id. ¶ 6.

**B. The Settlement Agreement and General Release**

Just over one year after filing the Human Rights Complaint, plaintiff and UMG executed a "Settlement Agreement and General Release" on November 30, 2005.   ECF No. 35-3.   The preamble to the Agreement and Release reads as follows:

---

[2]    The Court may consider the Agreement and Release and the Human Rights Complaint because they are integral to the allegations contained in the Amended Complaint.   See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court may also take judicial notice of the Agreement and Release and the Human Rights Complaint and, accordingly, may consider them on a 12(b)(6) motion to dismiss.   See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008); Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL CLAIMS AND A WAIVER OF ALL RIGHTS TO MAKE A CLAIM AGAINST UMG RECORDINGS, INC., THE UNIVERSAL MUSIC GROUP, INC., THE ISLAND/DEF JAM MUSIC GROUP, A DIVISION OF UMG RECORDINGS, INC., VIVENDI UNIVERSAL S.A., LABELS OWNED IN WHOLE OR IN PART BY THOSE ENTITIES, OR ANY AFFILIATED CORPORATION, OR ANY OTHER EMPLOYEE OR REPRESENTATIVE OF UMG RECORDINGS, INC., INCLUDING, BUT NOT LIMITED TO KEVIN LILES, OR ANY RELATED ENTITY OR JOINT VENTURE (COLLECTIVELY "UNIVERSAL" OR THE "UNIVERSAL RELEASEES" AS HERE DEFINED). YOU SHOULD CONSULT WITH AN ATTORNEY BEFORE SIGNING THE AGREMEENT.

In relevant part, paragraph 5(a) of the Agreement and Release states that plaintiff:

> [B]y execution of this Agreement and acceptance of the benefits provided to her pursuant to paragraph "2" of this Agreement, freely relinquishes and waives any and all possible claims against the Universal RELEASEES, including any and all judgments, claims, damages, or causes of action, or claims for attorneys' fees, which are known to her or reasonably should be known by her, which may have arisen from the beginning of time through the date of [the] execution of this Agreement.

Paragraph 5(a) of the Agreement and Release concludes with a statement that plaintiff "specifically acknowledges that she waives and releases any and all claims." Agreement and Release ¶ 5(a). Paragraph 5(b) of the Agreement and Release specifically references the Human Rights Complaint filed by plaintiff the year prior and states that:

> [Plaintiff] further agrees that she shall withdraw, with prejudice, the claim filed with the New York State

> Division of Human Rights . . . and she shall file no
> claim against Universal, or any of the Universal
> RELEASEES with any federal, state or local agency,
> arbitration association, or court alleging
> discrimination or harassment . . . or claiming any other
> injury arising from actions of Universal, or any of the
> Universal RELEASEES, up to and including the date of
> this Agreement.

That provision also states that "[t]his waiver includes all claims now known to [plaintiff] or that reasonably should be known by her." Id. ¶ 5(b).

The Agreement also contains language confirming that, at the time of execution, plaintiff: (i) was "advised to consult with an attorney" regarding the Agreement and Release; (ii) "consulted with an attorney about the terms and conditions" of the Agreement and Release; (iii) "carefully and thoroughly read each and every word" of the Agreement and Release in consultation with her attorney; (iv) "fully [understood] all provisions and effects" of the Agreement and Release, which were "thoroughly discussed" with her attorney; and (v) had the "opportunity to negotiate the terms" of the Agreement and Release "through her attorneys." Id. ¶ 8. Under the terms of the Agreement and Release, plaintiff received as consideration $47,500 "in full and complete settlement of her claims against the Universal RELEASEES," which was to be tendered by UMG to plaintiff "and the Law Offices of Dawn V. Martin." Id. ¶ 3.

-4-

**II.  Procedural History**

Plaintiff initially filed her complaint in Supreme Court, New York County on February 26, 2025, three days before the lookback period of New York's Victims of Gender-Motivated Violence Protection Law expired.  ECF No. 1-1.  In that complaint, plaintiff utilized the pseudonym "PCVA Jane Doe" and asserted claims against, inter alia, UMG and defendant Liles.[3]  Id.  Following an agreement between the parties, plaintiff filed an Amended Complaint, withdrawing her claims against several dissolved corporate entities and only asserting claims against Liles and UMG.  Id. at 68.  After plaintiff filed her Amended Complaint on April 2, 2025, Liles removed the action on the basis of diversity jurisdiction.  ECF Nos. 1-1, 9.  As noted earlier, neither plaintiff's initial nor Amended Complaint references or attaches the Human Rights Complaint or Agreement and Release mentioned above.[4]  ECF No. 1-1.

---

[3]   Given that plaintiff previously rejected Liles's offer to file the Agreement and Release under seal and agreed to proceed using her real name, the Court does not understand why the caption has not been amended to reflect plaintiff's actual name.  ECF No. 25 at 1-2.

[4]   The only explanation offered by plaintiff's counsel regarding the failure to mention either the Human Rights Complaint or the Agreement and Release was that plaintiff's prior attorney had died, and plaintiff did not retain a copy of the Agreement and Release.

Thereafter, on May 1, 2025, plaintiff requested a pre-motion conference proposing a second Amended Complaint, seeking to (i) dismiss her claims against UMG, (ii) remove UMG as a defendant, (iii) remove all allegations against UMG, and (iv) proceed with amended allegations against Liles stemming only from an alleged 2002 sexual assault.  ECF No. 24.  Liles filed a letter response that same day which revealed to the Court the existence of the Agreement and Release described above and submitted that any and all claims against Liles were expressly released by plaintiff upon her execution of the Agreement in 2005.  ECF No. 25.  Liles's May 2, 2025 letter further requested permission to submit full briefing as to Rule 11 sanctions.  Id.  Following the parties' submission of pre-motion letters, ECF Nos. 26, 27, the Court held a conference with the parties on May 15, 2025.  During the conference, plaintiff agreed to dismiss UMG from the case in light of the Agreement and Release, and subsequently did so via a May 19, 2025 Notice of Voluntary Dismissal, but requested to proceed with her claims against Liles.  ECF No. 33.  The Court instructed the parties to submit briefing on the issue of whether plaintiff's claims against Liles are barred by the Agreement and Release.  On May 16, 2025, Liles submitted his motion to dismiss, ECF No. 31, and memorandum of law, ECF No. 32 ("Def. Br.").  Plaintiff opposed Liles's motion

on May 30, ECF No. 36 ("Opp."), and Liles replied on June 6, ECF No. 37 ("Reply").

This Memorandum and Order addresses Liles's motion to dismiss plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The sole dispute before the Court is the scope of the Agreement and Release and whether it bars plaintiff's present claims against Liles.  The parties do not dispute the accuracy or authenticity of the Agreement and Release. Likewise, the parties do not dispute the accuracy or authenticity of the Human Rights Complaint filed by plaintiff in 2004. Accordingly, in deciding the present motion to dismiss, the Court considers both the Agreement and Release and the Human Rights Complaint, even though neither was referenced in or attached to plaintiff's Amended Complaint.

## DISCUSSION

### I.  The Agreement and Release Applies to Liles Individually

At the threshold, Liles maintains that, although UMG and plaintiff were the signatories to the Agreement and Release, he is explicitly and implicitly covered by the Agreement's plain terms. Def. Br. 7.  Specifically, Liles points to three aspects of the Agreement and Release to support his position: (i) the preamble; (ii) the definition of "Universal"; and (iii) the repeated use of

the plural term "Universal RELEASEES." Id.  In relevant part, the
preamble states that the Agreement:

> INCLUDES A RELEASE OF ALL CLAIMS AND A WAIVER OF ALL
> RIGHTS TO MAKE A CLAIM AGAINST . . . ANY OTHER EMPLOYEE
> OR REPRESENTATIVE OF UMG RECORDINGS, INC., **INCLUDING,**
> **BUT NOT LIMITED TO KEVIN LILES,** OR ANY RELATED ENTITY OR
> JOINT VENTURE (COLLECTIVELY "UNIVERSAL" OR THE
> "UNIVERSAL RELEASEES" AS HERE DEFINED).  (emphasis
> added).

Immediately below the preamble, the Agreement and Release defines
"Universal" as "all of the above entities or individuals[.]"
Agreement and Release at 1.  Further, several provisions of the
Agreement and Release refer to the "Universal RELEASEES," a plural
term defined in the preamble.  Id.  For example, the paragraph
pertaining to UMG's payment of $47,500 to plaintiff references the
"complete settlement of her claims against the Universal
**RELEASEES.**"  Id. ¶ 3 (emphasis added).  Similarly, provisions
governing the waiver and release of plaintiff's claims refer to
"any and all possible claims" that plaintiff "may have against the
Universal RELEASEES." Id. ¶¶ 5, 6.

Significantly, plaintiff's opposition does not directly
address whether Liles is individually covered by the Agreement and
Release, apparently conceding the point.  In any event, Liles is
expressly and unambiguously covered by the terms of the Agreement,
given that he is listed as a releasee in the preamble and included

-8-

in the relevant definition of "Universal."   The Agreement and Release's repeated use of the plural term "Universal RELEASEES" additionally confirms the presence of multiple subjects of the release, which expressly includes Liles.

## II.  The Agreement and Release Is Unambiguous and Applies to Plaintiff's Sexual Assault Claims

Implicitly acknowledging that the Agreement and Release covers Liles, plaintiff pivots to a contention that the Agreement and Release applies only to claims brought against UMG, as well as to any employment-related claims against Liles "arising in the course and scope of his employment."  Opp. 1.   Consequently, plaintiff maintains that the Agreement and Release neither contemplates nor covers her current claims against Liles for an alleged 2002 sexual assault.  Id.  Liles argues that plaintiff's arguments are belied not only by the plain language of the Agreement and Release, but also by her allegations as set forth in the Amended Complaint.  Def. Br. 7-10, 12.  We address these points in turn.

### A.  The Plain Text of the Agreement and Release Is Unambiguous

The plain text of the Agreement and Release is unambiguous: through its execution, plaintiff released "any and all possible claims against the Universal RELEASEES . . . which are known to her or reasonably should be known by her[.]"  Agreement and Release

¶ 5(a).  It is well-established that settlement agreements and releases are construed in accordance with general principles of contract law.  See, e.g., Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002).  It is similarly axiomatic that under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."  Greenfield v. Phillies Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002).[5]

The Agreement and Release, which is itself titled "Settlement Agreement and General Release," unambiguously covers the claims now alleged by plaintiff.  Looking to the "plain meaning" of the Agreement terms, Greenfield, 780 N.E.2d at 170, the preamble and opening paragraphs state that the Agreement constitutes the "good faith settlement of the matter and the ending of the employment relationship between [plaintiff] and Universal and all matters related thereto and all other matters between the parties[.]" Agreement and Release ¶ 1.  Paragraph 5(a) of the Agreement and Release explicitly provides that plaintiff released:

> [A]ny and all judgments, claims, damages, or causes of action, or claims for attorneys' fees, which are known to her or reasonably should be known by her, which may

---

[5]    The Agreement and Release states that it is to be "interpreted, enforced and governed under the laws of New York," which the parties do not dispute. Agreement and Release ¶ 10.

have arisen from the beginning of time through the date
of [the] execution of this Agreement.

The Agreement and Release further states that, through its
execution, plaintiff "freely relinquish[ed] and waiv[ed] any and
all possible claims against Universal RELEASEES." Id. ¶ 5(a).
Plaintiff's obligation not to sue the Universal entities and
individuals (including Liles) is similarly unequivocal: "she shall
file no claim . . . alleging discrimination or harassment . . . or
claiming any other injury arising from action of Universal, or any
of the Universal RELEASEES[.]" Id. ¶ 5(b).

Despite the broad language throughout the Agreement releasing
"any and all" claims, plaintiff argues that the Agreement and
Release is nevertheless limited to claims arising solely out of
plaintiff's employment relationship with Liles. Opp. 1-5.
Plaintiff points to the Agreement and Release's recitals, which
reference the signatories' desire to "resolv[e] the case and all
other matters between them concerning the employment relationship
and the termination of the employment relationship." Id. at 3-4,
8. Plaintiff further contends that the use of certain examples in
the Agreement and Release's provisions, which relate generally to
employment disputes, necessarily means that other, non-employment
related claims (such as those for sexual assault) are not covered
by the Agreement and Release. Id. at 4.

-11-

Plaintiff's arguments are unavailing.  The recitals mention the employment relationship between plaintiff and UMG and the UMG Releasees, but the Agreement and Release itself contains no language cabining its terms at all, much less to the artificially narrow category of claims "arising in the course and scope of [Liles's] employment" proffered by plaintiff.  Opp. 1.  To the contrary, the Agreement consistently and intentionally utilizes broad language discharging "any and all" claims which "are known or reasonably should be known" by plaintiff.  Agreement and Release ¶ 5(a), (b).  The recitals' reference to the employment dispute between plaintiff and UMG and the UMG Releasees does not limit or otherwise restrict the plain language of the Agreement and Release which, by its terms, expressly applies to "any and all" claims.

Similarly, the mere inclusion of traditional employment-related claims as examples in paragraph 5(a)-(b) plainly does not exclude non-employment related claims.  The employment-related examples are expressly preceded by the phrase "including but not limited to," confirming that the scope of the Agreement is, in fact, "not limited." Agreement and Release ¶ 5(a), (b).  It should be recalled that plaintiff was represented by counsel at the time of the Agreement and Release's execution.  If there was an intent to limit the Agreement and Release in some fashion, plaintiff's

counsel at the time could have proposed and insisted upon corresponding language.  No such limitation was included.

Plaintiff string-cites a lengthy list of cases in support of her argument that New York courts will restrict broad release language to claims that were contemplated by the parties at the time of execution.  See generally Opp. 5-15.  As a preliminary matter, this argument is unpersuasive because it is belied by the plain text of the Agreement and Release, whereby plaintiff released "any and all" claims that were "known to her or reasonably should be known by her," including claims for any "other injury." Agreement and Release ¶ 5(a).  Further, the Agreement and Release was signed in 2005, and the alleged assault by Liles occurred in 2002.  If true, plaintiff knew then every allegation of harassment and assault which is now contained in the Amended Complaint. Accordingly, plaintiff's argument that any possible assault claims were uncontemplated or unknown on November 30, 2005 fails.

Given the unambiguous language of the Agreement and Release, the compilation of case law cited by plaintiff is inapposite.  This includes the "seminal" Mangini v. McClurg, 249 N.E.2d 386 (N.Y. 1969), upon which plaintiff relies for her argument that New York courts routinely limit broad release language.  Opp. 6-9.  In Mangini, the parties executed general releases relating to

injuries stemming from an automobile accident.  249 N.E.2d at 388.
After the releases' execution, one of the plaintiffs was diagnosed
with an injury to her femoral head (the uppermost portion of the
femur which fits into the hip socket), which doctors agreed was
not known and could not have been known when the parties signed
the releases.  Id. at 388-89.  Acknowledging the "mutual mistake
of fact as to the extent of her injuries," the court agreed with
plaintiff that the parties "did not intend to discharge liability
for unknown injuries."   Id. at 388, 393.   Because no facts
suggesting mutual mistake or unknown injury are present here,
Mangini is irrelevant to plaintiff's proffered argument.   The
remainder of plaintiff's cited cases are inapposite either because
they (i) are factually distinguishable, or (ii) stand only for the
unremarkable proposition that releases can be limited by their
plain language.

        In sum, plaintiff asks the Court to read into the Agreement
and Release a limitation that does not exist and indeed would be
directly contrary to the "plain meaning" of its terms, Greenfield,
780 N.E.2d at 170.  The Court will not do so.

**B.   Plaintiff's Allegations Against Liles Are Characterized as
      Employment-Related**

        As noted above, the Agreement and Release's language is
unambiguous, clear, and broad in scope.  Plaintiff's argument that

the Agreement and Release is limited only to employment-related claims against Liles is incorrect. Even if the Agreement contained language expressly limiting its scope to employment-related claims (it does not), plaintiff characterizes her own claims as employment-related. Specifically, plaintiff alleges that Liles was at all times (i) "acting in the course and scope of his employment," (ii) used UMG's "facilities and locations" to assault plaintiff, and (iii) "used his position as an employee" to assault plaintiff. AC ¶¶ 36, 38, 39. Plaintiff argues that allegations pertaining to Liles's use of his UMG position were relevant only to UMG's liability as an employer under New York's Victims of Gender-Motivated Violence Protection Law. Opp. 16. According to plaintiff, those facts and allegations are now "moot" because UMG was dismissed from the action. Id. at 17.

Plaintiff's self-contradictory position is untenable. The Amended Complaint explicitly alleges Liles's use and abuse of his position as a UMG employee in connection with the alleged assault. AC ¶¶ 36, 38, 39. Seeking to avoid the consequences of that prior characterization, plaintiff now asks the Court to engage in a cherry-picking exercise, assigning weight to certain facts from the Amended Complaint while ignoring others. The Court declines to do so.

### III. Plaintiff's Request to Further Amend Her Complaint Is Futile

Plaintiff argues that she should be permitted to amend her Complaint yet again if the Court finds the facts contained therein "inconsistent or inapplicable." Opp. 17-18. Liles opposes this request on grounds that plaintiff has already once amended her Complaint and that further amendment would not cure any deficiencies. Reply 9-10. The Court rejects plaintiff's attempt to file a second Amended Complaint, as such efforts would be futile. See Williams v. Citigroup Inc., 599 F.3d 208, 218 (2d Cir. 2011) ("leave to amend need not be granted where the proposed amendment would be futile") (citation omitted). Plaintiff offers no argument to avoid the consequences of a comprehensive settlement agreement covering Liles and any and all claims arising "from the beginning of time" through the Agreement's execution, and for which plaintiff, represented by counsel, received consideration.[6] Moreover, plaintiff cannot plead around the plain text of the Agreement and Release. Further, because plaintiff's request

---

[6] Plaintiff's request to file a second Amended Complaint when her first two complaints were filed without an "inquiry reasonable under the circumstances" as mandated by Rule 11 is rejected for this additional reason as well. Fed. R. Civ. P. 11(b). In this regard, it should be recalled that each of plaintiff's complaints omitted the Agreement and Release, the amount of money received in connection with the Agreement's execution, and the Human Rights Complaint. A simple inquiry to plaintiff, regardless of whether she retained the relevant documents, would have revealed information warranting at a minimum further investigation.

represents an attempt to "blatantly change[] [her] statement of the facts in order to respond" to Liles's motion to dismiss, the Court would not be obligated to credit any such contradictory assertions on a second Amended Complaint. <u>Colliton v. Cravath, Swaine & Moore LLP</u>, No. 08 Civ. 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (citation omitted); <u>see also</u> <u>Andrews v. Metro N. Commuter R.R. Co.</u>, 882 F.2d 705, 707 (2d Cir. 1989).

## CONCLUSION

For the foregoing reasons, Liles's motion to dismiss is granted. The Clerk of the Court is respectfully directed to terminate the motion pending at ECF No. 31 and close the case.


**SO ORDERED.**


Dated:    November 24, 2025
          New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-17-